CIRILLO, Judge:
 

 This is an appeal from an order of the Court of Common Pleas of Delaware County dividing the parties’ marital estate. We affirm in part, and vacate and remand in part.
 

 Appellant William Gordon (Husband) and appellee Rosemarie Gordon (Wife) were married on May 31, 1958. Husband initiated this action in January of 1979 with a complaint in divorce alleging indignities to the person. Nine hearings were held, yielding 900 pages of testimony. Now, fifteen years later, the record reads like a Dickens novel.
 
 [1]
 
 As a result of the parties’ inability to settle their differences and their dissatisfaction with the trial court’s evaluation and distribution of the marital estate, the litigation has now endured almost as long as the marriage.
 

 Following several hearings, the master filed a report recommending entry of a divorce decree on the grounds of indignities. Exceptions were filed and denied and the Honorable Domenic D. Jerome entered a decree in divorce on September 4, 1980.
 

 Wife filed an appeal from the trial court’s order denying her request to proceed under the Divorce Code of 1980. On appeal, this court reversed and remanded for disposition of the economic issues in accordance with the 1980 Divorce Code.
 
 *131
 

 Gordon v. Gordon,
 
 293 Pa.Super. 491, 439 A.2d 683 (1981),
 
 affirmed
 
 498 Pa. 570, 449 A.2d 1378 (1982).
 

 Thereafter, on August 2, 1985, the Honorable Frank J. Lynch granted a bifurcated divorce on the grounds of indignities. That judgment was affirmed by this court on March 17, 1987.
 

 Hearings on the economic issues began in 1989. By an order dated September 10, 1991, the trial court entered its order finding the date of separation was December 31, 1977. On October 29, 1992, the court entered an order valuing the marital estate at $677,406.00:
 

 Marital Residence $161,000.00
 

 Husband’s Sun Oil Pension ($293,544.00 x .65 marital coverture fraction) 190,804.00
 

 Husband’s Retirement Benefits Continuation pay (88,749.00 x .65) 57,687.00
 

 Retirement bonus (7,100.00 x .65) 4,615.00
 

 Orbit (82,000.00 x .65) 53,300.00
 

 Husband’s Suncap Savings Account 100,000.00
 

 Sun Oil Stock 26,000.00
 

 Pair Rental Value of Marital Residence Less Wife’s Credits for Mortgage Payments and Maintenance 84,000.00
 

 TOTAL MARITAL ESTATE $677,406.00
 

 The court distributed the marital property equally between the parties. Thereafter, on November 9, 1992, Husband filed a “Petition for Reconsideration in the Form of Exceptions to the Court’s Opinion and Order.” One month later, Husband filed a Supplemental Petition for Reconsideration. The trial court failed to respond and Husband filed this appeal to preserve his appellate rights. Wife then filed a motion to quash which this court denied.
 
 [2]
 
 Pursuant to the trial court’s
 
 *132
 
 order, Husband filed a concise statement of matters complained of on appeal and the trial court disposed of those issues in an opinion dated June 21, 1993.
 

 On appeal, Husband raises eight issues:
 

 1. Did the court err in finding that the date of separation was December 31, 1977, rather than the Winter of 1975?
 

 2. Did the court err in using the date of Mr. Gordon’s retirement to value his pension, rather than the date of separation?
 

 3. Did the court err in concluding that the early retirement incentives offered in the Sun Company Involuntary Termination Program of 1987 were marital assets?
 

 4. To the extent the Sun Stock Savings Plan, Employee Stock Ownership Plan, and Sun Capital Accumulation Plan were derived from post-separation contributions, are they marital assets?
 

 5. Did the court err in characterizing the Optional Retirement Benefit Investment Trust (ORBIT) as both a retirement benefit and a marital asset?
 

 6. Did the court err in treating rental value of the marital residence as a marital asset?
 

 7. Did the court err in not awarding Mr. Gordon a credit equal to one-half the rental income from boarders taken in by Mrs. Gordon?
 

 8. Did the court err in failing to give Mr. Gordon a credit in the amount of $555.60 per month for each month from December, 1987 to the present?
 

 
 *133
 
 Husband’s challenges to the equitable distribution order must be reviewed with the following standard in mind: the trial court has broad discretion in fashioning equitable distribution awards and we will overturn an award only for an abuse of that discretion.
 
 Oaks v. Cooper,
 
 536 Pa. 134, 638 A.2d 208 (1994);
 
 Hovis v. Hovis,
 
 518 Pa. 137, 541 A.2d 1378 (1988). The Divorce Code
 
 [3]
 
 states that the trial court
 

 shall, ... equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such proportions and in such manner as the court deems just after considering all relevant factors....
 

 23 Pa.C.S. § 3502(a) (emphasis added). With these propositions in mind, as well as the Commonwealth’s policy to effectuate economic justice between the parties, 23 Pa.C.S. § 3102(a)(6), we review the trial court’s distribution order.
 

 Husband worked as a chemical engineer for Sun Oil Company from June 6, 1960 to July 1, 1987, at which time he accepted early retirement. His income consists of stock dividends and pension benefits. At the time of the 1991 hearing Wife worked full time as a secretary at Wyeth Laboratories with an annual income of approximately $20,000.00.
 

 The parties were married for nineteen years. They experienced difficulties beginning in the first year of their marriage. Despite prolonged marriage counseling, the parties were unable to resolve their differences and Husband became the victim of Wife’s habitual verbal and physical assaults. Wife disparaged Husband’s sexual performance in front of their daughter, and humiliated him in front of his employer and coworkers. She joined a “singles’ club” and, in 1975, Wife openly carried on an affair with a co-worker, taunting Husband with that fact. Much of the abuse relayed by Husband was corroborated by Wife’s sister, Edna Jane Wescoat.
 

 
 *134
 
 The evidence also indicated that Husband was not completely innocent; he frequently insulted and provoked Wife, thus establishing a pattern in their altercations. Nonetheless, the court determined that Wife’s behavior was excessive and unjustified. A divorce based on indignities, therefore, was granted.
 
 See
 
 23 Pa.C.S. § 3301(a)(2), (6).
 
 [4]
 

 In his first claim, Husband argues that the court erred in finding that the parties’ separation date was December 31, 1977. Absent an abuse of discretion, the trial court’s findings of fact, if supported by credible evidence, are binding upon a reviewing court.
 
 Campbell v. Campbell,
 
 357 Pa.Super. 483, 490, 516 A.2d 363, 366 (1986). As a reviewing court, we do hot usurp the trial court’s duty as finder of fact.
 
 Barnhart v. Barnhart,
 
 343 Pa.Super. 234, 237, 494 A.2d 443, 444 (1985).
 

 “Separate and apart” is defined by statute as “complete cessation of any and all cohabitation whether living in the same residence or not.” 23 Pa.C.S. § 3103. In
 
 Thomas v. Thomas,
 
 335 Pa.Super. 41, 483 A.2d 945 (1984), this court interpreted “cohabitation” as “the mutual assumption of those rights and duties attendant to the relationship of husband and wife.”
 
 Id.
 
 at 47, 483 A.2d at 948.
 
 Compare Mackey v. Mackey,
 
 376 Pa.Super. 146, 545 A.2d 362 (1988) (where the court found critical to the determination of separation the fact that the parties had private living quarters, no longer had a public social life together, and ceased sexual relations; despite the fact that the parties resided in the same house, the court concluded that they lived “separate and apart”)
 
 with Britton
 
 v.
 
 Britton,
 
 400 Pa.Super. 43, 582 A.2d 1335 (1990) (where parties jointly purchased a home, shared a checking account, social
 
 *135
 
 ized as husband and wife, and had resumed sexual relations, the court found the parties were not living “separate and apart”).
 

 Here, Husband testified that the parties continued sexual relations through March of 1978. Wife testified that the parties last engaged in sexual relations in December of 1977. In addition to each party’s testimony regarding the date that sexual relations had ceased, the trial court found critical the fact that the parties continued their marriage counseling through December of 1977, and the fact that in November of 1977 they entertained and socialized as husband and wife. The evidence indicates that social and financial interaction continued at least through December of 1977. The trial court determined, therefore, that the parties began living “separate and apart” on December 31, 1977.
 
 Thomas, supra.
 
 The trial court’s findings of fact are supported in the record and are sufficient to uphold the trial court’s determination.
 
 Campbell, supra.
 

 Next, Husband argues that the trial court erred in valuing his pension from Sun Oil Company. The trial court utilized the hearing date for valuation. Husband contends that the appropriate valuation date is the date of separation. Husband also contends that the use of the coverture fraction is inappropriate; in fact, he argues that the rationale of the fraction, established in
 
 Braderman v. Braderman,
 
 339 Pa.Super. 185, 196, 488 A.2d 613, 618 (1985), is a fallacy.
 

 Retirement pension benefits, vested and non-vested, are marital property subject to equitable distribution.
 
 Berrington v. Berrington,
 
 409 Pa.Super. 355, 360, 598 A.2d 31, 34 (1991) (citing
 
 Verdile v. Verdile,
 
 370 Pa.Super. 475, 485, 536 A.2d 1364, 1369 (1988)). If the benefits result from employment during the marriage, these benefits are marital property because they are conferred as part of the spouse/employee’s compensation package.
 
 See Flynn v. Flynn,
 
 341 Pa.Super. 76, 491 A.2d 156 (1985);
 
 King v. King,
 
 332 Pa.Super. 526, 481 A.2d 913 (1984). As a general rule, “[o]nly that portion of the pension attributable to the period commencing with the mar
 
 *136
 
 riage and ending on the date of separation is marital property!.]”
 
 Braderman,
 
 339 Pa.Super. at 196, 488 A.2d at 618.
 

 The type of pension plan in this case is a defined benefit plan, a plan in which the benefit is determined by a particular formula usually based upon years of service and salary history. The benefit is funded by employer contributions, and actuarily determined on a participant class basis.
 
 See
 
 Troyan,
 
 Federal Income Tax Consequences of Divorce-Related Pension Evaluation,
 
 15 FLR 3015 (1989). Unlike defined contribution plans, which focus on contributions for each individual employee, defined benefit plans do not maintain individual accounts and are therefore more difficult to value. Snyder,
 
 Pension Valuation with Inflation and Taxation,
 
 IX Pa.Family Lawyer 40 (1988). Present value discounting is utilized to value a defined benefit plan, and there are different rules which may be applied to reach a present value.
 
 See
 
 Wilder,
 
 Family Law Practice & Procedure
 
 (3d ed. 1993), § 23-2.
 

 This court has adopted a methodology for valuing a defined benefit plan using the immediate offset method of distribution.
 
 See DeMasi v. DeMasi,
 
 366 Pa.Super. 19, 530 A.2d 871,
 
 alloc. denied,
 
 517 Pa. 631, 539 A.2d 811 (1988) (citing
 
 Braderman v. Braderman,
 
 339 Pa.Super. 185, 488 A.2d 613 (1985)). The trial court applied this method. The last portion of the formula, however, which states that the coverture fraction is applied if a portion of the benefit was earned before marriage, is a point of contention here on appeal. Additionally, the Husband argues that the trial court improperly valued the pension as of the hearing date instead of the date of separation.
 

 Husband, a chemical engineer, began his employment with Sun Oil Company on June 6, 1960. He worked for Sun Oil Company throughout the marriage. Ten years after the parties separated, on July 1, 1987, Husband accepted early retirement. The equitable distribution order was entered in 1989. Husband contends that since no portion of the pension was earned before marriage, the coverture fraction is inapplicable and the pension should have been valued as of the date of separation. In its opinion, the trial court stated that “from
 
 *137
 
 either a legal or equitable standpoint” it could not value the pension as of the date of separation. The trial court cited to this court’s decisions in
 
 Katzenberger v. Katzenberger,
 
 409 Pa.Super. 10, 597 A.2d 636 (1991) and
 
 Berrington v. Berrington,
 
 409 Pa.Super. 355, 598 A.2d 31 (1991). We agree with the trial court’s valuation.
 
 See King v. King,
 
 332 Pa.Super. 526, 534, 481 A.2d 913, 917 (1984). We note, however, that both
 
 Katzenberger
 
 and
 
 Berrington
 
 are distinguishable from the instant case.
 

 In
 
 Katzenberger,
 
 the parties were married in 1963, separated in 1981, and divorced in 1984. Husband was employed with Mohawk Airlines as of 1968. Mohawk subsequently merged with U.S. Air. Husband continued his employment and was so employed as of the date of the hearing. The trial court valued the pension at a future date of retirement and utilized the coverture fraction and the deferred distribution method. Husband appealed. On appeal, this court reversed and remanded with the following instructions: “The pension benefits available for distribution are those which would have been payable if the husband-appellant had retired on the date of separation.”
 
 Id.,
 
 409 Pa.Super. at 14, 597 A.2d at 638. The Pennsylvania Supreme Court affirmed.
 
 Katzenberger v. Katzenberger,
 
 534 Pa. 419, 633 A.2d 602 (1993). In so doing, the Court relied on its decision in
 
 Berrington v. Berrington,
 
 534 Pa. 393, 633 A.2d 589 (1993).
 

 In
 
 Berrington,
 
 the parties married in 1955 and separated in 1984. Husband was employed by Westinghouse Electric Corporation and participated in the company’s retirement plan. He continued his employment after separation. The parties were divorced in 1987. Husband presented to the trial court a proposal valuing his pension benefits as of the date of separation. Wife’s proposal valued the pension as of a deferred date, the earliest of (1) Husband’s termination from service; (2) Husband’s death; or (3) the date Wife begins to receive her portion of the pension benefit.
 

 The trial court accepted Wife’s proposal and valued the pension benefit as of the deferred date. Husband appealed and this court reversed, stating that “the trial court’s distribu
 
 *138
 
 tion of the full pension benefits available upon [Husband’s] retirement, much of which was purchased with contributions made following separation, was erroneous.”
 
 Berrington,
 
 409 Pa.Super. at 373, 598 A.2d at 40. The Pennsylvania Supreme Court affirmed in a 4-2 decision.
 
 [5]
 
 The Supreme Court addressed the question of whether Wife would be unfairly penalized if her marital share of Husband’s pension is calculated by utilizing Husband’s salary as of the date of separation even though she would not collect her portion for years after separation. The Court stated:
 

 It may seem at first consideration that the trial court’s application of the coverture fraction to these increased contributions would prevent the post-separation (i.e., non-marital) increases from being distributed to wife. This, however, is not correct, for although the pension benefit would be reduced by the coverture fraction, the reduction would be applied to pension that was partially produced by increased post-separation contributions.
 

 Berrington,
 
 534 Pa. at 399, 633 A.2d at 592. The Court further held:
 

 [I]n a deferred distribution of a defined benefit pension, the spouse not participating may not be awarded any portion of the participant-spouse’s retirement benefits which are based on post-separation salary increases, incentive awards or years of service. Any retirement benefits awarded to the non-participant spouse must be based only on the participant-spouse’s salary at the date of separation.
 

 Id.
 
 at 402, 633 A.2d at 594 (emphasis added). We point out that both
 
 Katzenberger
 
 and
 
 Berrington
 
 utilized the deferred method of distribution, not immediate offset, which the trial court applied here.
 
 [6]
 

 
 *139
 
 Using the immediate offset method, the present value of the employee spouse’s defined benefit pension plan is determined at the time of the distribution hearing.
 
 See King v. King,
 
 332 Pa.Super. 526, 534, 481 A.2d 913, 917 (1984);
 
 see also Sutliff v. Sutliff,
 
 518 Pa. 378, 381-82, 543 A.2d 534, 536 (1988) (property must be distributed with reference to its value at the time of distribution);
 
 cf. McNaughton v. McNaughton,
 
 412 Pa.Super. 409, 603 A.2d 646 (1992) (in cases where long period of time has passed between separation and distribution, court should set values of marital property as close to distribution as possible).
 

 The rationale of
 
 Berrington
 
 and
 
 Katzenberger,
 
 that the nonparticipating spouse is not entitled to receive that portion of the benefit attributable to post-separation contributions, is applicable here. The formula utilized in those decisions, however, is not. The instant case presented circumstances appropriate for immediate offset distribution; there were sufficient marital assets to offset the pension and immediate distribution was feasible. Valuation as of the hearing date, the date closest to distribution, was, therefore, appropriate.
 
 King, supra.
 
 We note too that the Supreme Court in
 
 Berrington
 
 made allowance for increases in value as a result of factors other than post-separation employee contributions, presumably to account for inflation or upgrades in the plan. The Court noted that
 

 should there be increases in retirement benefits payable to the employee spouse between the date of marital separation and the date the non-participant spouse begins receiving benefits which are not attributable to the efforts or contributions of the participant-spouse, any such increased benefits may be shared by the non-participant spouse based upon his or her proportionate share of the marital estate.
 
 *140
 

 Berrington,
 
 534 Pa. at 403, 633 A.2d at 594.
 
 See also Liciardello v. Liciardello,
 
 391 Pa.Super. 219, 570 A.2d 1062 (1990). Likewise, utilization of the immediate offset method and the coverture fraction attempts to do the same, that is, eliminate the post-separation portion but at the same time give the nonparticipating spouse the advantage of the passage of time, inflation, upgrades in the retirement plan, and other “increased benefits.”
 
 Id.
 
 At the risk of oversimplification, we must keep in mind that neither formula can produce a mathematically exact valuation or account for every contingency,
 
 [7]
 
 and that the trial court is bound by the legislature’s directive to “effectuate economic justice.” 23 Pa.C.S. § 3102(a)(6).
 

 In this case, a part of the benefit was earned after separation and the court utilized the immediate offset method of distribution. Therefore, the coverture fraction is necessary to eliminate the post-separation portion so as to reach the ultimate marital portion of the benefit. We are cognizant of the fact that the coverture fraction “does not completely remove the valuation problem because such an approach does not take into consideration the compounding effect of thé plan.”
 
 See Cornbleth v. Cornbleth,
 
 397 Pa.Super. 421, 428, 580
 
 *141
 
 A.2d 369, 373 (1990). A valuation at separation, however, would not effectuate economic justice to the non-participating spouse.
 

 The coverture fraction is applicable to determine what part of the retirement benefit is attributable to the relevant time span, i.e., “the total period of time the employee-spouse contributed to the pension program from the date of marriage until the date of separation.”
 
 Berrington,
 
 409 Pa.Super. at 368, 598 A.2d at 38. Here, the retirement benefit exceeded the relevant time span; the parties separated in 1977 and Husband retired in 1987. In order to determine the marital property component of the retirement benefit, where a portion of the benefit is non-marital, the present value of the benefit is multiplied by the coverture fraction to determine the present value of the component that was acquired during the marriage.
 
 Miller v. Miller (I),
 
 395 Pa.Super. 255, 577 A.2d 205,
 
 alloc. denied,
 
 525 Pa. 664, 583 A.2d 794 (1990);
 
 Braderman, supra.
 

 The trial court in this case valued the pension at $293,544.00. Separating from this amount the quotient from the coverture fraction, yields the marital portion of the pension benefit. Here, the trial court applied a coverture fraction of .65 to the value of the pension; this yielded a value of $190,804.00, the marital portion of the pension benefit. Wife’s marital share was one-half of that amount. In determining the coverture fraction, the trial court utilized the separation date of December 31, 1977.
 
 See Katzenberger, supra
 
 (numerator of the coverture fraction equals the total period of time the employee/spouse participated in the plan from the date of marriage until the date of separation; the denominator equals the total period of time the employee/spouse participated in the pension benefit). In this case, the numerator equaled 17.5 (June 6, 1960 to December 31, 1977) and the denominator equaled 27 (June 6, 1960 to July 1, 1987). The coverture fraction, therefore, equaled .65. The court utilized the immediate offset method, and applied this fraction to the value of the benefit as of the hearing date, the date closest to distribu
 
 *142
 
 tion.
 
 See Miller (I), supra
 
 (when using the immediate offset method of distribution, the valuation date should be as close as possible to the distribution date);
 
 King, supra; see also Sutliff, supra. See generally
 
 Wilder, Pa.Family Law Prac. & Proc. (3d ed.), § 23-3. The court properly multiplied the coverture fraction by the present value of the retirement benefit to reach the present value of the pension benefit acquired during the marriage.
 
 Braderman,
 
 339 Pa.Super. at 196-200, 488 A.2d at 619-20. We conclude, therefore, that Husband’s argument is meritless.
 

 In his next claim, Husband argues that the trial court improperly included in the marital estate certain early retirement incentives offered in the Sun Company Involuntary Termination Program of 1987. Whether an asset is marital property or separate property for purposes of distribution of the marital estate is a matter within the sound discretion of the trial court.
 
 Ruth v. Ruth,
 
 316 Pa.Super. 282, 462 A.2d 1351 (1983). An abuse of discretion occurs if the trial court fails to follow correct legal procedure or misapplies the law.
 
 Braderman, supra.
 

 Husband contends that the benefits he received as a result of participating in the Involuntary Termination Program, listed above, should not have been included in the marital estate. This issue, husband submits, is controlled by
 
 LaBuda v. LaBuda,
 
 349 Pa.Super. 524, 503 A.2d 971 (1986),
 
 alloc. denied,
 
 514 Pa. 648, 524 A.2d 494 (1987).
 

 In
 
 LaBuda,
 
 the parties were married on February 1, 1947 and separated on July 4, 1980. Husband claimed that a lump sum retirement incentive was improperly included in the marital estate. Husband elected to participate in a Bethlehem Steel Corporation “Special Early Retirement Incentive Program” pursuant to which he was to receive a payment of $813.20 for twenty-one months.
 
 Id.
 
 at 532, 503 A.2d at 976. The fact that the retirement incentive was received after the parties had separated was not disputed, nor was it found to be dispositive of the issue. This court found, however, that the
 
 *143
 
 right to receive this property did not accrue during marriage.
 
 See Braderman, supra.
 
 We stated:
 

 The crucial point is this: eligible employees were not notified of the program until April, 1983.... Employees had to decide no later than May 31, 1983, whether they wished to participate in the plan and they had to retire by July 31, 1983. Appellant did both. Therefore, this property “right” did not accrue prior to the parties’ separation. [Wife] could not expect to enjoy these payments when [Husband] received them because neither party had any idea that he would receive the payments until after they separated.
 

 LaBuda,
 
 349 Pa.Super. at 533, 503 A.2d at 976.
 
 See also Adelstein v. Adelstein,
 
 381 Pa.Super. 221, 553 A.2d 436 (1989) (marital property is identified at the date of separation and valued at the date of distribution).
 

 Frequently, an employer will offer incentives, such as wage continuation payments or bonuses, in addition to the basic pension benefit, to encourage early retirement. Here, Husband retired at the age of 56 under such an incentive program, the involuntary termination program. Such a plan exists in a company only on a periodic basis, usually at a time when the company is downsizing, restructuring or streamlining its operations.
 

 Sun Oil Company offered the plan in 1987, ten years after the parties had separated. Husband had ten days to consider the plan and, after deciding to take advantage of the plan, he was required to retire on July 1 of that year. The trial court reasoned that because the inducements were “figured and based upon the Husband’s 27 years of service [17 of which were marital years] ... [t]hey are part and parcel of the pension package that accrued during the entire period of the employment and cannot and should not be equitably cut out, thereby denying the wife the marital portion thereof.” The court relied upon the case of
 
 Holland v. Holland,
 
 403 Pa.Super. 116, 588 A.2d 58 (1991) and
 
 Schubert v. Schubert,
 
 398 Pa.Super. 284, 580 A.2d 1351 (1990) to support its reasoning. We find such reliance misplaced.
 

 
 *144
 
 In
 
 Holland,
 
 the deferred distribution method was applied. The court stated that since the non-employed spouse is required to wait until he or she receives the distribution of pension benefits, that spouse is permitted “to enjoy increases in value occasioned by continued employment of the worker.”
 
 Holland,
 
 403 Pa.Super. at 118, 588 A.2d at 60. In other words, the non-participating spouse is compensated for the inconvenience of deferred distribution. Here, the court utilized the immediate offset method of distribution; the non-employed spouse is not required to wait for distribution.
 

 In
 
 Schubert,
 
 husband accepted an early retirement plan after 37 years of employment at Honeywell Corporation.
 

 During the course of the parties’ marriage, the Banker’s and Traveler’s insurance policies were provided by [Honeywell] and were paid in part from deductions from [Husband’s] salary. Pursuant to the early retirement plan, paycheck deductions were continued to pay the premiums of the insurance policies.
 

 Id.,
 
 398 Pa.Super. at 291, 580 A.2d at 1355 (emphasis added). The parties were married for 21 years.' The insurance policies were taken out on the life of the parties’ daughter. Four years after the parties separated, the parties’ daughter died in an automobile accident. The trial court found that although the wife was entitled to the cash value of the policies at the time of separation, she was not entitled to the proceeds.
 

 On appeal, this court reversed and held that wife was entitled to a share of the proceeds from these insurance policies because the benefits had accrued during the marriage. We stated: “Most importantly, we find that [wife] is entitled to a share of the proceeds ... since we find that the policies were not only purchased but maintained with marital funds.”
 
 Id.
 
 at 291, 580 A.2d at 1355.
 

 This reasoning is not applicable in the case before us. The fact that the policies in
 
 Schubert
 
 were purchased and maintained during the marriage is a distinguishing feature. We find, therefore, that the trial court’s reliance upon
 
 Schubert
 
 is misplaced. The insurance policies in
 
 Schubert
 
 are unlike post-separation upgrades in a pension plan. Moreover, the insur
 
 *145
 
 anee policies were not offered as an incentive to early retirement. The policies are comparable to deferred compensation, and align more clearly with basic retirement benefits, the marital portion of which is subject to equitable distribution,
 
 Braderman, supra,
 
 than with post-separation incentives and bonuses which, although based on years of service, are separate property.
 
 LaBuda, supra.
 
 Unlike basic pension benefits which are planned and contemplated throughout service, the incentive plan is not anticipated, but offered unexpectedly.
 

 Further, an incentive retirement plan is not necessarily occasioned by the continued employment of the worker; in fact, it is a condition of termination of employment. In most cases, this is an unpredictable and fortuitous event not contemplated during the marriage.
 
 LaBuda, supra.
 

 Here, Husband testified that his department had been reorganized, that his position had been altered, and that he believed he was being phased out. He stated that unlike the younger engineers, he was not computer literate and he believed that his management skills and experience were insufficient to compensate for this. Essentially, Husband stated that his decision to accept the early retirement program was based on the fact that he could not be assured of these incentives upon normal retirement age, nor could he be assured that his position would not be eliminated entirely. Unlike basic retirement benefits, which accrue during the course of employment, the early retirement incentives are an inducement to persuade termination.
 

 We agree with Husband’s argument;
 
 LaBuda
 
 is controlling here. Neither
 
 Holland
 
 nor
 
 Schubert
 
 is applicable, and neither case has altered the law as stated in
 
 LaBuda, supra.
 
 We conclude, therefore, that the early retirement incentive plan benefits offered to Husband in 1987 are not marital property.
 
 LaBuda, supra.
 

 In his fourth claim, Husband argues that the marital portion of his Suncap Savings Account was improperly valued at $100,000.00. The trial court, in its opinion, has acknowledged its error. Because Husband had already filed his notice of appeal, however, the court was unable to modify its order.
 
 See
 
 Pa.R.A.P. 1701(a).
 

 
 *146
 
 The Suncap Savings Account, an employee stock option plan offered by Sun Oil Company, entitled Husband to purchase shares of stock in the company at a reduced cost on an annual basis. The trial court was correct in including the Suncap account in the marital estate. The shares purchased during the marriage and prior to separation, and the distributions or increase in value of those shares are properly includable in the marital estate.
 
 See
 
 23 Pa.C.S. § 3501(a);
 
 see also Schneeman v. Schneeman,
 
 420 Pa.Super. 65, 615 A.2d 1369 (1992) (increases due to interest or returns on investment in the value of the amount contributed during the marriage are marital property);
 
 Lowry v. Lowry,
 
 375 Pa.Super. 382, 544 A.2d 972 (1988) (proceeds from sale of jointly held stock was marital property, subject to equitable distribution).
 

 Our review of the document on which the parties and the court relied, Sun Stock Savings Plan and Suncap Accrual/Distribution/Disposition, R. 22, indicates that, as a result of contributions made during the marriage, from July 1, 1970 through June 30, 1977, the Sun Stock Account realized $44,-001.75 from the sale of shares which were purchased during the marriage.
 
 [8]
 
 This amount, along with compounded interest, represents the marital share.
 
 See Schneeman, supra.
 

 
 *147
 
 Husband also argues that the court erred in identifying 465 shares of Sun Oil stock as marital property. In its opinion the trial court acknowledges this error, indicating that 157 shares, not 465 shares, are marital property. We agree. The record indicates that 314 shares of Sun Oil stock were issued to Husband between July 1, 1977 and June 30, 1978; for half of that period, six months, the parties were married and not separated. One-half of that amount 157 shares, must be valued as marital property.
 

 In his fifth claim, Husband argues that the trial court improperly characterized his Optional Retirement Benefit Investment Trust (ORBIT) as a marital asset. ORBIT was offered by Sun Oil Company in 1981, four years after the parties separated. Although separate from the early retirement incentive program offered by Sun Oil in 1987, ORBIT increased Husband’s monthly retirement benefit beginning in July of 1988. Although Husband purchased ORBIT with funds ($27,033.47) from the Suncap Account, we do not find this dispositive here. This was an option offered to Husband four years after separation; at that time, the funds in the Suncap Account had not been distributed into marital shares. It is impossible to tell at this point whether any of the marital portion of the Suncap Account was used to purchase ORBIT and we cannot speculate that it was.
 
 See
 
 23 Pa.C.S. § 3501(a)(3) (assets acquired in exchange for marital assets are marital property unless the assets are altered significantly and improved post-separation);
 
 cf. Solomon v. Solomon,
 
 531 Pa. 113, 611 A.2d 686 (1992) (portion of trust fund was not marital property where wife had no right to it during the marriage and it was not in exchange for marital property). We conclude, therefore, that this claim must be resolved in accordance with
 
 Labuda, supra,
 
 and our discussion in issue three above.
 

 In his final three claims, Husband challenges the trial court’s order with respect to the marital residence. Husband
 
 *148
 
 argues that the court’s inclusion of the rental value of the marital home into the marital estate was error, that its failure to credit him for one-half of the rental income was error, and that its failure to credit him for the interim payments made to Wife pending resolution of the parties’ property rights was error. We agree with Husband’s argument that fair rental value is not includable in the marital estate,
 
 Ruth, supra;
 
 we find no abuse of discretion, however, in the court’s finding that Husband was not entitled to the aforementioned credits.
 
 See Schneeman, supra.
 

 With respect to the interim payments, Wife received $555.60 each month from July, 1987 to October, 1989. Husband’s argument consists of the statement that he should be given credit for those payments. Husband’s claim is unsupported, lacking references to the record or to any legal authority. We, therefore, dismiss this claim as meritless.
 

 We also find meritless Husband’s claims that the rental value of the marital home was improperly included in the marital estate and that he should have been credited for one-half of the rental income. A court must consider the efforts of both spouses in preserving and maintaining the marital assets.
 
 See
 
 23 Pa.C.S. § 3502(a)(7). An equitable distribution order, therefore, may include an award to the non-possessing spouse of one-half of the rental value of the marital residence when possessed exclusively by the other spouse during the parties’ separation.
 
 Powell v. Powell,
 
 395 Pa.Super. 345, 577 A.2d 576 (1990);
 
 Gruver v. Gruver,
 
 372 Pa.Super. 194, 539 A.2d 395 (1988);
 
 Hutnik v. Hutnik,
 
 369 Pa.Super. 263, 535 A.2d 151 (1987);
 
 Gee v. Gee,
 
 314 Pa.Super. 31, 460 A.2d 358 (1983). This award, however, is not mandatory.
 
 See Butler v. Butler,
 
 423 Pa.Super. 530, 545, 621 A.2d 659, 668 (1993); see
 
 also
 
 23 Pa.C.S. § 3502(a)(7).
 

 Wife remained in the marital residence after the parties separated. Although Husband continued to pay the mortgage until February of 1991, Wife took in tenants, maintained the
 
 *149
 
 property, and made the mortgage payments after February of 1991. Wife received a small amount of rental income from various tenants, usually college students in the area. Additionally, the parties’ son lived with Wife for a time after his college graduation. He assisted his mother with the maintenance and upkeep of the property and also paid room and board. Husband claims that the rental income should be included as a marital asset and that he is entitled to one-half of that amount. We disagree.
 

 First, we note that there is some discrepancy as to the amount of room and board the parties’ son paid Wife. At the hearing on August 1,1990, Wife testified that her son paid her $45.00 each week. N.T., 8/1/90, pp. 86-87. Wife later testified that he paid $50.00 per week. N.T., 4/11/91, p. 79. In his brief, Husband states the amount was $50.00
 
 per month
 
 plus some shared household expenses. Husband’s references to the record are not conclusive as to the amount in question. More importantly, however, contrary to Husband’s assertions, room and board is not necessarily marital property. Room and board is more than mere rental income; it may encompass meal preparation, grocery shopping, laundry services and housecleaning services. There is nothing in the record which establishes what portion of room and board pertained specifically to rent, we conclude, therefore, that Husband’s claim for a share of room and board is without merit.
 

 Husband’s claim for a share of rental income also fails. The trial court, in fashioning an equitable distribution order, must consider all relevant factors including,
 
 inter alia,
 
 the “contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, ...” 23 Pa.C.S. § 3502(a)(7).
 
 See Sutliff v. Sutliff,
 
 361 Pa.Super. 504, 525, 522 A.2d 1144, 1154 (1987) (“Although an award of rent is permissible, we do not deem it an abuse of discretion by the court to refuse to take such an action in this case.”);
 
 see also Sehneeman, supra
 
 (while each party is entitled to his or her equitable share of marital property, including the fair rental value of the marital residence, the
 
 *150
 
 trial court need not compute that equitable share as a credit to the non-possessory spouse, as long as the total distributory scheme is equitable);
 
 Powell, supra
 
 (it is in the trial court’s discretion to determine whether the non-possessor spouse is entitled to a portion of the fair market rental value).
 

 We find that the trial court did not abuse its discretion in declining to credit Husband for rental income. The award adequately compensated Husband for his rights and interests in the marital property. In addition to considering Wife’s contributions and maintenance of the home, the court considered other relevant factors, including the amount and sources of income of the parties, the parties’ relative vocational skills and employability, and the opportunity of each party for future acquisitions of capital assets and income. 23 Pa.C.S. § 3502(a)(5), (6). We note, too, that the court was not unaware that Husband possessed substantial non-marital assets. The court properly considered all of these factors in attempting to effect economic justice between the parties, 23 Pa.C.S. § 3102(a)(6), and we, in turn, “evaluate the court’s decision in light of the totality of the circumstances and the equitable distribution order as a whole.”
 
 Sutliff,
 
 361 Pa.Super. at 525, 522 A.2d at 1154.
 

 The trial court also included in the marital estate $84,000.00, an amount representing the fair rental value of the marital home. The trial court adopted the Husband’s proposed findings of fact and valued the fair market rental of the marital residence at $105,000.00. The court then deducted from that amount Wife’s credit of $21,000.00, which included $18,497.30 for maintenance expenses and $3,122.60 in mortgage payments. The resulting figure, which the trial court rounded off to $84,000.00, was included in the marital estate and divided equally between the parties. This was error.
 

 In
 
 Butler, supra,
 
 we stated:
 

 The fair market rental value of the marital residence cannot be considered a marital asset subject to equitable distribution as it represents revenues that were foregone by the marital estate due to the wife’s residence in the property
 
 *151
 
 after the parties separation. Therefore, the fair rental value of the marital home was improperly deemed a marital asset by the trial court, thereby artificially inflating the value of the marital estate. As the wife’s share of these foregone potential revenues, which would have been part of the aggregate marital estate, were consumed during her tenure in the marital home[,] she is not entitled to receive any portion of these foregone revenues.
 

 Butler,
 
 423 Pa.Super. at 547, 621 A.2d at 668. We do find it appropriate, however, for the court to consider on remand the propriety of crediting Wife for her mortgage and maintenance payments and to consider as well the effect that the aforementioned recalculations will have on the total distributory scheme.
 
 Butler, supra; Schneeman, supra.
 

 Accordingly, we affirm in part and vacate and remand in part for correction of the order in accordance with this opinion. Jurisdiction is relinquished.
 

 [1]
 

 . In
 
 Bleak House,
 
 Charles Dickens lamented the protracted suit of "Jarndyce and Jarndyce,” which had outlived the original parties and their descendants, but persisted in dragging "its weary length before the Court[.]” Dickens,
 
 Bleak House,
 
 Part One, Chapter One (1852-1858).
 

 [2]
 

 . It should be noted that the trial judge has indicated in his opinion that the issues are waived because the Petition for Reconsideration in the Form of Exceptions was untimely filed. The court’s order was entered October 29, 1992 and Husband’s petition was filed on November 9, 1992. (November 8, 1992 fell on a Sunday). Despite its statement that the issues were waived, the court addressed Husband’s claims. Wife
 
 *132
 
 filed a motion to quash and this court denied that motion on the authority of
 
 Gemini Equipment Co. v. Pennsy Supply, Inc.,
 
 407 Pa.Super. 404, 409, 595 A.2d 1211, 1214 (1991). In
 
 Gemini,
 
 this court found that a timely filed petition for reconsideration performed the function of a post-trial motion under Pa.RX.P. 227.1. Here, Husband’s petition for reconsideration was filed within ten (10) days of the entry of the court’s order and, although not in proper form, it performs the function of a post-trial motion. Wife claims that the procedural irregularities require dismissal. Although we agree that this case is fraught with procedural anomalies, dismissal is neither warranted nor permitted where we can effectively review those claims preserved for our review.
 
 See Kurtas v. Kurtas,
 
 521 Pa. 105, 109, 555 A.2d 804, 806 (1989);
 
 see also Downey v. Downey,
 
 399 Pa.Super. 437, 582 A.2d 674 (1990).
 

 [3]
 

 . The Divorce Code of April 2, 1980, P.L. 63, No. 26, as amended 1988, February 12, P.L. 66, No. 13 was repealed by Act of December 19, 1990, P.L. 1240, No. 206, § 2, and substantially reenacted as Part IV of the Domestic Relations Code.
 
 See
 
 23 Pa.C.S. §§ 3101-3707.
 

 [4]
 

 . Section 3301 provides in relevant part:
 

 § 3301. Grounds for divorce
 

 (а) Fault. The court may grant a divorce to the innocent and injured spouse whenever it is judged that the other spouse has:
 

 j¡; :}s s*s H* H*
 

 (2) Committed adultery.
 

 (б) Offered such indignities to the innocent and injured spouse as to render that spouse’s condition intolerable and life burdensome.
 

 23 Pa.C.S. § 3301(a)(2), (6).
 

 [5]
 

 . Justice Larsen did not participate in this decision, nor did he participate in
 
 Berrington, supra.
 
 Justice Cappy and Justice Montemuro dissented in both
 
 Katzenberger, supra,
 
 and
 
 Berrington, supra.
 

 [6]
 

 . The immediate offset method assigns a present value to the benefits and divides the benefits at the time of the equitable distribution order. This method "has the advantage of avoiding further entanglement
 
 *139
 
 between the parties ... [and] it effectuates a final and immediate settlement of the distribution of the retirement benefits.... ”
 
 Miller I,
 
 395 Pa.Super. at 261-62, 577 A.2d at 208-09, (quoting
 
 Braderman v. Braderman,
 
 339 Pa.Super. 185, 488 A.2d 613, 619-20 (1985)).
 
 See also Miller v. Miller (II),
 
 421 Pa.Super. 23, 25 n. 1, 617 A.2d 375, 376 n. 1 (1992).
 

 [7]
 

 . This is illustrated in the dissenting views of Justice Cappy and Justice Montemuro in
 
 Berrington, supra.
 
 Justice Cappy stated:
 

 A promise to pay an amount based upon a formula that may be influenced by efforts after separation is "property” acquired at the time of the promise under a normal definition of the term.... In my view, at the time of the parties’ separation, a participant spouse has acquired a
 
 promise
 
 from the employer to make deferred compensation payments (for the years of the marriage) based upon a formula that can produce
 
 higher or lower
 
 pension benefits than those calculated based upon the employee’s earnings at the date of separation.
 

 Berrington,
 
 534 Pa. at 409-10, 633 A.2d at 598 (emphasis in original). Justice Cappy noted that in a downward economy, income reductions may result in a salary which is lower at the time of retirement than at the time of separation, and, therefore, the "inequity resulting from the majority's approach can cut both ways.”
 
 Id.
 
 at 406, 633 A.2d at 596.
 

 Justice Montemuro stated in his dissent that the majority had departed from the two discrete forms of distribution, immediate offset and deferred distribution, and had created another method with properties of both. He suggested that the "amalgamation” was “premised on a questionable valuation mechanism, which consequently fails to compensate the non-employee spouse for waiting to receive her portion of the pension, benefit....”
 
 Id.
 
 at 414, 633 A.2d at 600.
 

 [8]
 

 . The trial court adopted the Distribution/Disposition schedule marked R.22 in the record. Neither parties have objected to the use of this schedule and we, therefore, have utilized it in reaching this determination. The amount realized during the marriage as a result of shares sold
 
 from contributions made during the marriage
 
 is broken down as follows:
 

 [[Image here]]