J-A25018-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| DONNA IEZZI HAWKINS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| JOSEPH HAWKINS | |
| Appellee | No. 494 EDA 2014 |

Appeal from the Order of January 21, 2014
In the Court of Common Pleas of Delaware County
Civil Division at No.: 07-3259

BEFORE:  DONOHUE, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:          **FILED NOVEMBER 03, 2014**

Donna Iezzi Hawkins ("Wife") appeals the January 21, 2014 order that disposed of the parties' economic claims arising from their divorce.  After review, we are constrained to vacate the order of the learned trial court, and we remand for further proceedings.

Wife and Joseph Hawkins ("Husband") married on October 20, 1979. On March 27, 2007, Wife filed a complaint in divorce.  The date of separation was December 31, 2003.  On March 26, 2010, Wife filed a petition for bifurcation that the trial court ultimately granted.  On December 15, 2010, the divorce decree entered.  A master was assigned to hear the equitable distribution matter, but retired before reaching a determination.  Trial Court

---

[*]     Retired Senior Judge assigned to the Superior Court.

J-A25018-14

Opinion ("T.C.O."), 3/26/2014, at 2. On November 27, 2013, the trial court held a hearing on the parties' economic claims.

The trial court made the following findings of fact and conclusions of law:

> [Wife] is currently 56 years of age and currently resides [in Wilmington, Delaware]. [Husband] is currently 64 years of age and currently resides [in Drexel Hill, Pennsylvania].
>
> The parties . . . have one emancipated child, Alicia . . . . Wife also has a son from her previous marriage[, Brian,] who was adopted by Husband and is also emancipated.
>
> Wife is employed as an Office Manager at the University of Pennsylvania and has held that position since 1992. Wife receives "good benefits" from the University of Pennsylvania and her present gross salary is $54,000. In addition, Wife holds a Bachelors of Arts degree from the University of Pennsylvania which she received during the parties' marriage.
>
> Since the December 14, 2010 divorce, Wife has remarried and purchased a home with her new husband who has a background as an accountant. Wife testified that her current household income is approximately $150,000. This Court also heard credible testimony that Wife is in excellent health.
>
> Husband was employed with Sunoco during the parties' marriage and continued post[-]separation until retiring at age 55. Husband testified that he was effectively forced into retirement in December of 2005 after Sunoco lowered his grade level by two grades. Husband received an incentive package for retirement from Sunoco and has been unable to secure suitable employment since. . . . Husband is not in good health as he suffers from arthritis. Husband has little prospect of meaningful employment in the future.
>
> *  *  *
>
> Husband has helped the parties' daughter, Alicia, pay for her college tuition and loans. After separation Husband took over four (4) Sallie Mae loans on behalf of Alicia. This Court notes that Alicia attends college at the University of Pennsylvania and

- 2 -

since her mother (Wife) is an employee there, 75% of daughter's tuition is paid by the University. This Court heard testimony that Husband has paid $55,000 of daughter's college loans/tuition to date and that the present amount owed on those loans is $57,223.02. In addition Husband pays $1,400 per month toward the college loans/tuition for the daughter.

The marital residence was sold after Wife filed her Complaint in Divorce and the proceeds were placed in an escrow account.

During the Equitable Distribution Trial, [W]ife called Kenneth Biddick to testify with respect to the present day valuations of the marital estate, including the parties' retirement accounts and plans, stocks, bank accounts, and life insurance cash values. Mr. Biddick was qualified by this Court as an expert in forensic accounting. Mr. Biddick testified to the appreciated and accumulated values, dividends, distributions, loans, and referred generally to stocks sometime dividing and advised the Court that he relied on Wife's new husband (who is also an accountant) to provide him with the documents and information upon which he reached his conclusions and testified to in open Court.

This Court heard extensive testimony that both Husband and Wife had and still have numerous retirement accounts and pensions. Husband and Wife disagree about the date the Court should use to value the various retirement accounts and pensions. Husband submitted to the Court that the particular facts and circumstances, supported by the prevailing case law requires a date of separation value, and Wife argues that the prevailing case law requires a date of distribution value.

There is no disagreement between the parties regarding the date of separation, December 31, 2003, and the value of the various retirement and pension plans as of that date. There is also no disagreement that the various retirement accounts/pensions had had significant withdrawals by both parties since December 31, 2003. Since the December 31, 2003 date of separation, both parties have relied upon and withdrawn, on multiple occasions, substantial amounts from the retirement funds, with each party assuming their own tax consequences for the early withdrawal.

Wife testified that she withdrew $97,000 from her retirement funds for living expenses for herself and her new husband as well as legal expenses. Husband was permitted, by a Court Order signed by Judge Cartisano on November 15, 2010, to withdraw up to $60,000 annually from his Sunoco Vanguard

retirement account. Husband testified to withdrawing a total of $135,000 from his retirement accounts to assist with his living and medical insurance expenses since he was laid off from Sunoco in December of 2005.

The Court was provided with some testimony, based upon Mr. Biddick's extrapolation as to the value of this account and the monthly amount that Wife should receive upon her retirement. This Court again has concerns, with the methods and documentation, or lack thereof, used by Wife's expert to reach the total and monthly amount that will be provided to Wife upon her retirement from the University of Pennsylvania.

Based upon the Divorce Code and the current case law, this Court determined that Wife's Retirement Allowance Plan from the University of Pennsylvania is considered marital property by this Court.

This Court was also asked to equitably divide the Sunoco wage continuation severance pay,[1] which was provided to Husband upon his retirement from Sunoco in December of 2005. This retirement/severance package . . . consisted of Husband's wage continuation and his unused vacation days and it was provided to [H]usband upon his retirement in December of 2005. Based upon the Divorce Code and the current case law this Court further determined that Husband's wage continuation and severance pay, that included unused vacation days, will not be . . . considered marital property by this Court and is not considered a marital asset as it is post[-]separation income for Husband.

T.C.O. at 4-8 (citations to record omitted).

On January 21, 2014, the trial court filed its equitable distribution order. In that order, the trial court reasserted its misgivings regarding Wife's expert's testimony given the lack of testimony about methodology,

---

[1] Wife characterizes this payment as severance pay. Husband calls it a wage continuation. For ease of reference, we use "severance pay."

lack of supporting documentation, and the expert's reliance upon the work product of Wife's husband. Order, 1/21/2014, at 6, 8. The court found that there was no marital debt. *Id.* at 16. The court also determined that the date of separation value for the retirement/pension funds should be used because both parties had made withdrawals from the funds post-separation and the expert testimony about current value was too speculative to support date of distribution values. *Id.* at 17-18. The court ordered a 50/50 distribution scheme of assets as of the date of separation. *Id.* at 23-27.

On February 4, 2014, Wife timely filed a notice of appeal. On February 7, 2014, the trial court ordered Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Wife timely complied. On March 26, 2014, the trial court filed its Pa.R.A.P. 1925(a) opinion.

Wife raises four issues for our review:

1. The Trial Court abused its discretion and misapplied the existing law in the Commonwealth of Pennsylvania in choosing the valuation date for marital property as the date of separation (December 1, 2003) as opposed to the preferred valuation date being the date of distribution. Said determination awarded to [Husband] all appreciation in the marital property and accounts over the intervening time period of the separation which acts as a windfall for [Husband].

2. The Trial Court erred in choosing the separation date versus the date of distribution for valuing assets as the law applied by the Trial Court related to closely held businesses/ corporations controlled by one party as opposed to marital assets such as savings, retirements, pension, real estate, etc.

- 5 -

3. The Trial Court erred and committed an abuse of discretion in determining the value of [Husband's] lump sum pension payment from Sunoco and therefore, failed to apply a coverture fraction which would have established the marital portion of [Husband's] Sunoco retirement.

4. The Trial Court erred and committed an abuse of discretion when it determined that [Husband's] severance pay package, which was based upon years of service while the parties were married and residing together, was not a marital asset subject to being apportioned for marital property purposes by applying a coverture fraction to the sum received less unused vacation days which [Husband] had accumulated after the parties separated.

Wife's Brief at 3.

> Our standard of review in assessing the propriety of a marital property distribution is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.
>
> When reviewing an award of equitable distribution, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

**Smith v. Smith**, 904 A.2d 15, 18 (Pa. Super. 2006) (citations and quotation marks omitted).

Wife's first two issues challenge the trial court's use of the date of separation for valuing assets. Wife contends that the trial court erred in using the date of separation value for the marital assets because it provides a windfall to Husband in the appreciation of the assets. Wife also argues that the case law that the trial court relied upon in deciding to use the date of separation value was inapposite. Wife's Brief at 9-13.

Husband responds that the case law supports the proposition that the trial court has broad discretion to use either date of separation or distribution based upon what economic justice in the particular circumstances requires. Husband contends that the trial court considered all of the appropriate factors in deciding to use the date of separation values and the 50/50 distribution. Husband's Brief at 6-14.

The trial court explained that, while the date of distribution ordinarily is preferred, a date of separation valuation worked better economic justice for these parties. T.C.O. at 10. The trial court stated that case law supports its application of the date of separation values to the parties' retirement and bank accounts. *Id.* at 11. Because Husband and Wife each withdrew substantial amounts from their respective retirement accounts between separation and distribution, and because the accounts were subject to market forces, the trial court found that date of distribution valuations were too speculative to be reliable. Further, the court determined that using date of distribution values would result in a windfall to Wife and would be unjust for Husband. *Id.* at 12.

We have confronted the date of valuation issue on prior occasions. In *Sergi*, we identified the various problems that can arise in choosing valuation dates. *Sergi v. Sergi*, 506 A.2d 928, 931 (Pa. Super. 1986). We stated that using date of separation valuations could result in a distribution using stale data or could neglect to consider appreciation or depreciation of assets. However, we also noted that using date of distribution valuations

would fail to account for assets that were consumed during the pendency of the divorce and would allow a party to avoid including a marital asset in distribution. Ultimately, we concluded that:

> [W]e do not attempt at this time to establish a valuation to be used in every situation. To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice.

*Sergi*, 506 A.2d at 932.

Since *Sergi*, we have upheld trial court decisions that have used date of distribution valuations, as well as decisions that have used date of separation valuations; these affirmances relied upon the fact that the trial court provided a sufficient rationale for its decision. *See, e.g.*, *Diamond v. Diamond*, 519 A.2d 1012, 1017 (Pa. Super. 1987) (using date of separation for land that was improved by the husband's post-separation efforts); *Bold v. Bold*, 516 A.2d 741, 745 (Pa. Super. 1986) (using date of distribution when new appraisal was more credible and there was no evidence of waste or dissipation). Recognizing that the Divorce Code provided no express valuation date, our Supreme Court has held that, in the usual case, a valuation date close to distribution should be used. *Sutliff v. Sutliff*, 543 A.2d 534, 536 (Pa. 1988). Acknowledging that preference, we also have noted that there were factual situations, such as when one spouse consumes or dissipates an asset or when one party during separation has control of the fate of an asset, such as a closely held business, where date of separation

values may be more appropriate. *Smith v. Smith*, 653 A.2d 1259, 1270-71 (Pa. Super. 1995).

Based upon this case law, we reject Wife's contention that the trial court applied inapposite decisional law. Here, the trial court aptly recognized that it must determine the date of valuation within the context of the overarching goal of working economic justice between the parties. The trial court found that the date of distribution values provided were based upon conjecture and that their use would result in a windfall to Wife. The trial court appropriately considered that Husband is older, in worse health, and has less of an opportunity to acquire assets than Wife, among the other factors, in equitably dividing the marital estate. We cannot say that the trial court abused its discretion in doing so.

Wife next challenges the trial court's valuation of Husband's lump sum pension payment. Wife argues that, upon his retirement, Husband received his pension as a lump-sum pay-out. Wife asserts that, because the lump sum was Husband's pension, which was based upon his years of service, a coverture fraction should have been applied to the lump sum to determine what portion of it was marital property. Wife's Brief at 14-17.

The trial court stated that a coverture fraction is only applied when it is necessary to determine what portion of a pension or retirement plan is marital property. T.C.O. at 13. The trial court found application of a coverture fraction to be unnecessary because the pension started after the date of marriage and the trial court used the date of separation as the

valuation date. Therefore, the trial court concluded that the entire amount was marital. T.C.O. at 14.

Wife's expert Kenneth Biddick testified that Husband received a lump sum payment for his retirement. According to Mr. Biddick, that included a lump sum from Sun Ship and a lump sum from Sunoco. Notes of Testimony ("N.T."), 11/27/2013, at 97-100. Husband disputed this characterization of his retirement. Husband admitted that he received a lump sum in 2005 when he retired and that he put that money into a Merrill Lynch account. *Id.* at 312. However, Husband asserted that Wife's expert double-counted a Sun Ship pension that had merged into the amount from Sunoco when he transferred jobs and that there were not two separate lump sums. *Id.* at 309. Husband also provided documentation showing the lump sum that he would have received as of the date of separation. *Id.* at 310 (citing Exh. D-3).

There are two issues here. The first is whether the pension, or a portion of the pension, is a marital asset and the second is how it should be distributed. Wife concentrates her argument on the first issue. Courts have struggled to define what portion of a pension is marital, and specifically, how to treat post-separation enhancements to that pension. *See Smith v. Smith*, 938 A.2d 246, 253-57 (Pa. 2007) (detailing the history of Pennsylvania Supreme Court cases and split decisions addressing the issue). In *Meyer*, our Supreme Court held that increased pension benefits that were based solely upon years of service were to be included in the marital estate

and were subject to a coverture fraction. ***Meyer v. Meyer***, 749 A.2d 917, 919 (Pa. 2000). The ***Smith*** Court noted that post-separation enhancements to a pension were generally marital property, but that the General Assembly had specifically carved out those enhancements "arising from postseparation monetary contributions made by the employee spouse." ***Smith***, 938 A.2d at 259. However, enhancements resulting "merely from continued employment, such as supplemental retirement income, [and] bonus inducements," were marital property. ***Id.*** Following ***Smith***, we addressed whether cost of living adjustments to a pension were marital property. ***See MacDougall v. MacDougall***, 49 A.3d 890, 894 (Pa. Super. 2012). Finding that the adjustments were automatic, based upon the husband's years of service and accrued without the husband's effort or contribution, we determined that they were marital property. ***Id.*** at 894, 896.

Wife's arguments are correct. However, they are unavailing. The trial court found that the entire pension was marital property. Order, 1/21/2014, at 10. Because the entire pension was marital, there was no need to apply a coverture fraction. Wife's actual argument is not that the court excluded part of the pension as non-marital, but that the court distributed more of the pension to Husband. Wife received half of the pension's value as of the date of separation. ***Id.*** at 24. It is undisputed that the pension's value grew after that date. However, the trial court found that the equities of the case required it to award that growth to Husband. ***Id.*** at 17. The trial court considered the age and employment opportunities of the parties, their

- 11 -

health, their respective household incomes, and the other factors as required by 23 Pa.C.S.A. § 3502(a). *Id.* at 3-5, 17. The record supports those findings, and the trial court did not abuse its discretion in making such an award.

Wife's final issue raises a similar challenge. Wife argues that the severance pay that Husband received should have been deemed a marital asset because it was based upon Husband's years of service. Wife concedes that part of this severance was based upon Husband's unused vacation days and that that portion is not marital. Wife's Brief at 18-20. Husband contends that the severance pay was earned after separation and should not be included in the marital estate. Husband's Brief at 20.

We confronted a similar issue in *Gordon v. Gordon*, 647 A.2d 530 (Pa. Super. 1994) ("*Gordon I*").[2] In *Gordon I*, the husband was offered an incentive to retire early. *Id.* at 538. Because this offer was unexpected and not a planned benefit available during the husband's employment, and because it was not a result of the husband's continued employment, we determined that the incentive plan was not marital property. *Id.* at 539. A divided Supreme Court affirmed based upon the rationale that the date of

---

[2] Our Supreme Court reversed *Gordon I* on the other issue raised before the Court, *i.e.*, what date should be used for valuing the marital potion of the defined benefit plan. *Gordon v. Gordon*, 681 A.2d 732 (Pa. 1996). However, an equally divided court affirmed on the issue of whether the retirement incentive benefits were marital. *Id.* at 739 (Castille, J. concurring & dissenting, joined by Zappala & Nigro, JJ.).

accrual of the benefits should determine whether the property was marital.

*Gordon v. Gordon*, 681 A.2d 732, 739 (Pa. 1996) (Castille, J. concurring & dissenting) ("*Gordon II*").

After *Gordon I*, we focused upon whether the benefits had been expected by the parties.

> This court has been forced to ascertain what types of increases may or may not qualify as marital property. For example, post-separation incentives and bonuses, although based on years of service, are not marital property. *Gordon I*, 647 A.2d at 538–39. *See also LaBuda v. LaBuda*, 503 A.2d 971 (Pa. Super. 1986), *alloc. denied,* 524 A.2d 494 (Pa. 1987) (participant spouse accepted a post-separation early retirement incentive; because the right to receive the bonus did not accrue prior to the parties' separation, the bonus could not be considered part of the marital estate). Unlike basic pension benefits, which are planned and contemplated throughout service, incentive plans are not anticipated and not occasioned by continued employment. *Gordon I*, 647 A.2d at 539.
>
> The pension enhancement in this case, as opposed to the retirement plan in *Gordon I*, was part of the benefits package in place throughout the marriage. It was not an unanticipated incentive or a bonus offered post-separation. Rather, the enhancement amounted to deferred compensation. As such, we conclude that it is marital property subject to equitable distribution

*Brown v. Brown*, 669 A.2d 969, 974-75 (Pa. Super. 1995) (citations modified).

However, the *Smith* Court noted that, in 2004, the General Assembly modified the Divorce Code to address distribution of defined benefit plans, by adding subsection (c) to 23 Pa.C.S.A. § 3501. *Smith*, 938 A.2d at 257. The comment to the rule states that it was intended to "codify the result

reached by Justices Flaherty, Cappy and Newman regarding the postseparation retirement enhancements in **Gordon** [**II**]." 23 Pa.C.S.A. § 3501, cmt. "The justices listed above opined that since no present efforts or contributions of the employee spouse were required to receive the supplemental retirement income and bonus inducements, they were includable in the marital estate." **Id.** While not addressing early retirement incentives, the **Smith** Court concluded that the only post-separation enhancements to be excluded are those that represent the employee spouse's monetary contribution. **Smith**, 938 A.2d at 259. In **MacDougall**, we adopted the methodology of **Smith**, holding that the determinative factor was whether the increases were automatic or due to the spouse's contributions. **MacDougall**, 49 A.3d at 894.

Instantly, the trial court relied upon **Gordon I** and **Labuda** for the proposition that the time of the accrual of the benefit was the controlling factor. T.C.O. at 15. While neither case has been explicitly overruled, "we must defer to the legislature as the policy making body." **Smith**, 938 A.2d at 258. The General Assembly clearly rejected the methodology of **Gordon I**. **See** 23 Pa.C.S.A. § 3501, cmt.

Husband testified that he was offered "wage continuation" to retire. N.T. at 300. Husband received the equivalent of four weeks' pay each month for fourteen and one–half months. **Id.** at 339. Husband testified that the amount was based upon his years of service. **Id.** at 340-41.

However, Husband could not remember the amount that he received. *Id.* at 347-48.

Here, based upon the limited testimony, the severance pay was not due to any efforts or contributions from Husband. Instead, it was based upon his years of service. Therefore, pursuant to **Smith** and section 3501, the severance pay was marital and is subject to a coverture fraction because it was based upon Husband's entire time in service, including some years after separation. The trial court erred in concluding that this pay was not marital property.

Because the record is sparse regarding the severance pay, the trial court may need to take additional evidence to determine the value of that severance pay and to divide it equitably. Because the inclusion of this additional asset may disturb the trial court's distribution scheme, we vacate the January 21, 2014 order to allow the court to divide the marital estate in the manner it deems required to achieve economic justice.

Order vacated. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/3/2014

- 15 -