503 A.2d 971

**Dorothy M. LaBUDA**

v.

**Joseph L. LaBUDA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1985.

Filed Jan. 28, 1986.

526

Mark Malkames, Allentown, for appellant.

Raymond J. DeRaymond, Easton, for appellee.

Before SPAETH, President Judge, and HOFFMAN and HESTER, JJ.

HOFFMAN, Judge:

This is an appeal from the judgment of the lower court entered in accordance with the court's order and accompa-

nying memorandum opinion of February 25, 1985. The order provided, *inter alia,* for the equitable distribution of the parties' marital property. For the following reasons, we vacate the judgment, affirm in part and reverse in part the court's order, and remand for further proceedings consistent with this opinion.

The parties married on February 1, 1947, (Master's Report at 3), and separated on July 4, 1980, (*id.* at 14). On November 5, 1981, appellee wife filed a complaint in divorce. Appellant husband answered, and, on December 22, 1981, the lower court appointed a special master to hear testimony and file a report with recommendations concerning the following claims: marital dissolution, equitable apportionment of marital property, permanent alimony, and counsel fees and costs. *See* Pa.R.Civ.P. 1920.51(a)(1). Hearings were scheduled and held from June 4, 1982, to January 19, 1984. On September 14, 1984, the master filed his report. *See generally id.* 1920.53, 1920.54. On September 24, 1984, both parties filed exceptions to the master's report. *See id.* 1920.55(a). After making several corrections to the master's report based on the parties' exceptions, the lower court decreased the total value of the marital estate from $233,758.10 to $204,758.10. The court did not, however, disturb the master's recommended division of the marital property; appellee was awarded a fifty-five percent share of the marital estate, and, to the extent each party's pension was marital property, each party was to share equally in the other's pension. This appeal followed.

■ Appellant raises four issues [1] challenging the lower court's award. We will not upset the trial court's equitable distribution award absent a clear abuse of discretion. *Ruth v. Ruth,* 316 Pa.Superior Ct. 282, 286, 462 A.2d 1351, 1353 (1983). Under this standard, we do not usurp the trial

---

1. We have grouped appellant's numerous contentions into four broad categories. While we address each of appellant's arguments, we note that appellant's brief did not conform to Pa.R.A.P. 2119(a), in that the argument portion did not track the statement of questions involved and the arguments were not labeled.

court's duty as fact finder.[2] *Id.*, 316 Pa.Superior Ct. at 287, 462 A.2d at 1353. We do, however, "carefully scrutinize" each of the Divorce Code, 23 P.S. §§ 101–801, factors to be considered by a court when equitably distributing marital property, *see id.* § 401(d), in determining whether the court below abused its discretion.[3] *Ruth v. Ruth, supra,* 316 Pa.Superior Ct. at 287, 462 A.2d at 1353. Furthermore, "an abuse of discretion will be found by this court if the trial court failed to follow proper legal procedures or misapplied the law." *Braderman v. Braderman,* 339 Pa.Superior Ct. 185, 191, 488 A.2d 613, 615 (1985). With this standard of review in mind, we turn to appellant's contentions.

## I. The 50/50 "Starting Point"

Appellant first contends that the master, relying on *Paul W. v. Margaret W.,* 130 P.L.J. 6 (Ct.C.P. Allegheny County 1981), erred in stating that, in equitably distributing the marital property, "the starting point for considering all relevant factors should be an equal division of [the] marital property." (Master's Report at 6). Appellant cites *Ruth v. Ruth, supra,* for the proposition that, in view of the factors set forth in 23 P.S. § 401(d), there is no need to resort to a "presumptive starting point." We find that the master's use of a 50/50 starting point was proper.

In *Paul W. v. Margaret W.,* the court held that an equal division of the marital property was the "only appropriate starting point" for equitably distributing the marital property. *Paul W. v. Margaret W., supra* at 8. We are persuaded by the court's rationale in adopting such a starting point. The court first noted that "there is no way to weigh the [§ 401(d)] factors against each other without a

2. Of course this assumes that the trial court found facts. *Cf. Ruth v. Ruth, supra,* 316 Pa.Superior Ct. at 292, 462 A.2d at 1356 (SPAETH, J. (now P.J.), dissenting) ("First we look to see whether the lower court has made findings of fact....").

3. In other words: has the court considered the facts in light of the factors? In this regard, we note 23 P.S. § 404: "In an order ... for distribution of property, the court shall set forth the reason or reasons for the distribution ordered."

starting point at which to begin the weighing process." *Id.*
In choosing an equal division of the marital property to be
that starting point, the court noted the following: (1) if the
§ 401(d) factors favor neither party, any other distribution
would not "insure a fair and just determination and settle-
ment of [the parties'] property rights," 23 P.S. § 102(a)(6);
(2) because historically property jointly owned by the par-
ties was divided equally and the Divorce Code gives each
party an interest in property acquired during the marriage,
*see id.* § 401(f), the Legislature must have intended that the
martial property be divided equally when consideration of
the § 401(d) factors did not result in a distribution in favor
of one of the parties; and (3) this starting point is consist-
ent with the notion of marriage "as a shared enterprise or
joint undertaking in which both parties contribute to the
acquisition and preservation of marital assets" and where
"full recognition is to be given to non-economic contribu-
tions." *Paul W. v. Margaret W., supra* at 8–9.

Appellant's reliance on *Ruth v. Ruth, supra,* is mis-
placed. There, in discussing our abuse of discretion stan-
dard of review in equitable distribution cases, we stated
that

> we [would] not choose to follow presumptions in the hope
> of achieving the legislature's goal of "economic justice."
> At oral argument ... a suggestion was made by counsel
> for the parties that this Court adopt "guidelines" or
> establish "presumptions" to be applied in deciding issues
> involving property rights under the [Divorce] Code. In
> view of the legislative guidelines [that] are set out [in 23
> P.S. § 401(d) ], we [saw] no need for this Court to enu-
> merate additional criteria.

*Id.* 316 Pa.Superior Ct. at 287, 462 A.2d at 1353. Here,
appellant questions the master's use of a starting point; he
is not questioning *our* use of such a point "in determining
whether or not the lower court abused its discretion." *Id.*
In any event, we are not establishing any presumptions or
guidelines. As the *Paul W. v. Margaret W.* court put it:
"Equality is not a formula for distribution but only a

starting point at which the court will begin to weigh the factors presented in [a] particular case." *Paul W. v. Margaret W., supra* at 10. Thus the use of a 50/50 *starting point* is not an end to the matter of equitable distribution. A court must then apply the § 401(d) factors to reach an *equitable* distribution. That is exactly what was done in the instant case: in approving the master's division of the marital property, the lower court noted that "he also considered all the factors for equitable distribution set forth in Section 401(d) of the Divorce Code, thereby arriving at a 45/55 division of marital assets." (Lower Court Opinion at 4).[4] We wish to make clear, then, that "equitable does not automatically mean equal." N. Perlberger, *Pennsylvania Divorce Code* § 5.2 at 3 (1980); *see also Semasek v. Semasek*, 331 Pa.Superior Ct. 1, 11, 479 A.2d 1047, 1052 (1984) (concept of equitable distribution is not an equal division of the marital property). Accordingly, because we find no error in the master's use of a 50/50 starting point, we find this contention meritless.[5]

## II. When is Property Acquired After Separation Marital Property?

Appellant next contends that certain property that he received after he and appellee separated is not marital property. Specifically, appellant claims that "retirement incentives," a "lump-sum retirement incentive," and a portion of his Bethlehem Steel Savings Plan were improperly included in the marital estate by both the master and the lower court.[6]

"Marital property" is defined generally as follows:

4. We refer throughout this opinion to the lower court's February 25, 1985 opinion. The court's Pa.R.A.P. 1925(a) opinion of April 8, 1985, "specif[ies] that the place in the record where the lower court's reasons for the entry of the Order appealed from may be found is in the Memorandum Opinion accompanying the Order dated February 25, 1985."

5. Appellant also challenges the master's application of the § 401(d) factors. That issue is considered below in section IV of this opinion.

6. In holding that appellant's pension plan, savings plan, and retirement incentives (including the lump-sum payment) were marital prop-

All property, whether real or personal, acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties in some form of co-ownership such as joint tenancy, tenancy in common or tenancy by the entirety. The presumption of marital property is overcome by a showing that the property was acquired by a method listed in subsection (e).

23 P.S. § 401(f). However, "[p]roperty acquired after separation until the date of divorce" is *not* marital property. *Id.* § 401(e)(4). Reading these two provisions together, we find that the § 401(f) presumption merely begs the question here: when was the property *acquired?*

We agree with appellant that he received the above three items of property after he separated from appellee. But that is not an end to the question. This Court has noted: "It is acknowledged in jurisdictions requiring the distribution of marital property that a spouse has a right, co-extensive with that of a wage-earner spouse, to a portion of retirement benefits *accrued* during marriage." *Flynn v. Flynn*, 341 Pa.Superior Ct. 76, 82, 491 A.2d 156, 159 (1985) (emphasis added). We have also stated that to deny one spouse a share of the other's retirement benefits would deny the former something he or she "helped to achieve during the marriage." *Braderman v. Braderman, supra,* 339 Pa.Superior Ct. at 194, 488 A.2d at 617. "Each spouse has a reasonable expectation of enjoying the monies received from an employee retirement fund." *Id.*, 339 Pa.Superior Ct. at 194, 488 A.2d at 617. Accordingly, we have held:

> Since a pension benefit is an economic resource acquired with funds that would otherwise have been utilized by the parties during their marriage to purchase other assets, it

erty, the master stated that they "should be equally distributed by the Court." (Master's Report at 10). Our review of the record, however, indicates that the master included the accrued (*i.e.,* already paid) pension benefits (including ten months of the retirement incentives), the savings plan, and the lump-sum payment in the marital estate subject to the 55/45 division. *See id.* at 31–35. We only state this for the record; neither party addresses the issue here.

constitutes marital property. This determination is made without regard to the possibly contingent nature of the pension, whether or not it has vested or matured.

*Flynn v. Flynn, supra,* 341 Pa.Superior Ct. at 83, 491 A.2d at 160. *See generally Braderman v. Braderman, supra,* 339 Pa.Superior Ct. at 192, 488 A.2d at 616 (distinguishing among types of retirement or pension benefits). However, "only that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code." *King v. King,* 332 Pa.Superior Ct. 526, 530, 481 A.2d 913, 915 (1984). Thus, the above cases suggest that it matters not when a spouse receives property, but whether the right to receive such property accrues during the marriage. To the extent that a property right "accrues" or "arises" during the marriage, then, the spouses expect they will enjoy the property when they receive it. With these principles in mind, we will consider appellant's contentions.

■ Appellant first contends that the retirement incentives he received after his separation from appellee are not marital property. We agree. Appellant elected to participate in a Bethlehem Steel Corporation "Special Early Retirement Incentive Program" pursuant to which he was to receive a payment of $813.20 for twenty-one months beginning in November, 1983. Appellant argued below that those payments "were a special sweetener offered by [his] employer for early retirement, a benefit or option which had not accrued prior to the separation." (Appellant's Exceptions to Master's Report no. 6 at 2). The lower court found that the payments were marital assets because they were "received in lieu of the regular pension and surviving spouse benefit in part." (Lower Court Opinion ¶¶ 9, 12 at 4). This is incorrect. The twenty-one month payments were to be received in addition to the regular pension and special (lump-sum) payment and were equal to twenty-five percent of an employee's monthly salary. *See* Bethlehem Steel's General Announcement to All Nonrepresented Sala-

ried Employees. The crucial point is this: eligible employees were not notified of the program until April, 1983. *See id.* Employees had to decide no later than May 31, 1983, whether they wished to participate in the plan and they had to retire by July 31, 1983. Appellant did both. Therefore, this property "right" did not accrue prior to the parties' separation. Appellee could not have expected to enjoy these payments when appellant received them because neither party had any idea that he would receive the payments until after they separated. Accordingly, we reverse the lower court's order insofar as it includes these payments in the marital estate subject to equitable distribution.

■ The lower court also found that appellant's "special lump-sum retirement payment of $10,549.00 was properly included as a marital asset since it was received in lieu of the regular pension and surviving spouse benefit in part." (Lower Court Opinion ¶ 9 at 4). The record supports this conclusion. In a letter to "Dear Fellow Salaried Employee" from Bethlehem Steel's Vice Chairman and Chairman of the General Pension Board, appellant was notified that the company's "pension plan provides that an eligible salaried employee can apply for and, upon meeting specified requirements, receive a lump-sum payment in lieu of the special payment, regular pension and surviving spouse benefit." *See also* General Pension Board's Notice of Change in Interest Rate Used in Lump-Sum Payment Calculations. Therefore, this lump-sum payment was received in lieu of benefits that accrued to appellant while he was married and was correctly included within the marital estate.[7]

---

7. The master found that, because "no breakdown was given as to what was acquired during the marriage prior to separation and what was acquired after separation, ... the entire amount [should] be considered marital and subject to distribution." (Master's Report at 17). Similarly, here on appeal appellant has not argued what the breakdown of the payment should be if we find it to be a marital asset. Therefore we also find that the entire amount of the lump-sum payment is marital property.

■ Appellant also contends that the master erred in including the entire amount, $15,610.00,[8] of his Bethlehem Steel Savings Plan as a marital asset. We agree. Only those contributions to the plan made by appellant (and the company's matching contributions) during the time that the parties were married are marital property. Contributions made after the date of their separation obviously did not accrue to appellant before their separation date. We therefore reverse the lower court's order insofar as it includes the full amount of the savings plan in the marital estate. In his inventory and appraisal, appellant valued the plan at $9,000. On remand, the court shall determine the value of the plan as of July 4, 1980, and adjust its award accordingly.

### III. The Pension "Formula"

Appellant next contends that the master erred in valuing his pension benefits and in dividing them equally between the parties. Specifically, appellant argues that the master erred in (1) failing to consider that appellant's earnings were at their highest level in the period following the parties' separation and at their lowest before such period in devising a formula to determine what portion of appellant's pension plan is marital property; (2) using the deferred distribution, rather than the immediate offset, method of dividing the pension benefits; (3) calculating the value of the accrued pension benefits that appellant received because he was not given credit for taxes taken out of his gross pension pay; and (4) recommending that the pension benefits be divided equally because of appellant's greater needs. We find these contentions either waived or meritless.

■ In computing the portion of appellant's pension benefits to be received by each party, the master proceeded as follows:

---

**8.** While the master originally noted the correct value of the plan, *see* Master's Report at 9, he misstated the amount as $10,549.00, *see id.* at 17, and as $10,610.00, *see id.* at 21, 32. The latter figure was used in the computation of the total value of the marital estate. When the lower court amended the estate value, it used $10,549.00 as the base figure. *See* Lower Court Opinion at 5. The difference is insignificant.

At the time of separation, [appellant] had accrued 27.5 years of service which shall be used as the numerator, and the denominator shall be the total years of service, i.e. 30, which shall be multiplied by the monthly [pension] payments [to be received by appellant] to arrive at the portion of the plan which is [appellee's] share.

(Master's Report at 14).[9] Appellee concedes that no adjustments were made to the above formula to reflect the fact that appellant's earnings may have been greater following the parties' separation. (Brief for Appellee at 7). In ruling on appellant's exception, the lower court found that "[t]he Master used a fair and equitable method to allocate the value of pension benefits [that] accrued prior to the separation and after separation." (Lower Court Opinion at 4). We do not believe that the lower court abused its discretion in light of the fact that neither before the master, the lower court, *see* Appellant's Exceptions to Master's Report no. 5 at 2, nor this Court on appeal has appellant offered an alternative formula for determining what portion of his pension is marital property.

■ Appellant's next two arguments are waived. Pennsylvania Rule of Civil Procedure 1920.55 provides in relevant part that:

Within ten days after notice of the filing of the master's report has been mailed, exceptions may be filed by any party to the report or any part thereof, to rulings on objections to evidence, to statements or findings of fact, to conclusions of law, or to any other matters occurring during the hearing. Each exception shall set forth a separate objection precisely and without discussion. *Mat-*

**9.** The fraction utilized by the master is known as the "coverture fraction":

The fraction represents that portion of the value of the pension that is attributable to the marriage. The numerator of the fraction is the total period of time the employee spouse was participant in the plan from date of marriage until date of separation, and the denominator is the total period of participation in the pension plan.

*King v. King, supra*, 332 Pa.Superior Ct. at 533, 481 A.2d at 916.

*ters not covered by exceptions are deemed waived unless, prior to the entry of the final decree, leave is granted to file exceptions raising those matters.*

Pa.R.Civ.P. 1920.55(a) (emphasis added). Issues (2) and (3) here were not covered in appellant's exceptions, and appellant did not move for leave to file exceptions raising these matters before the entry of the final decree. Accordingly, we will not consider these arguments for the first time on appeal. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R. A.P. 302(a).

■ Appellant also argues that the master erred in equally dividing the pension benefits. He argues that his earning capacity is minimal due to his various health problems, that appellee is not burdened with similar health problems, that she has a higher earning ability, and that her "contributions to [the] acquisition [of the pension] were indirect and uncertain in the best of circumstances." (Brief for Appellant at 14). We agree with the lower court that "[t]he Master considered all of the factors listed by [appellant], and arrived at a fair and equitable method of dividing the pension income of the parties," (Lower Court Opinion at 7), and thus find no abuse of discretion. Appellant's health was primarily relevant to the master's using the deferred distribution method of dividing the pension, (Master's Report at 12–14), and, in any event, appellant is retired and "continue[s] to be covered by health insurance and that coverage is a benefit to [him]...." (*Id.* at 9–10). While the master did find that appellee "has a somewhat higher earning ability," he also found that "she has never been employed in a supervisory capacity[,] has generally been a laborer[, and] ... has attempted to procure employment without success, for the most part." (*Id.* at 31). And, regarding appellee's contributions to appellant's acquisition of his pension, we note that, while finding that "[n]either party substantially contributed to the increased earning power of the other," (*id.* at 26), the master also found that

*appellee's* pension should be divided equally between the parties. *See id.* at 6–9.

### IV. The 55/45 Equitable Distribution of the Marital Property

Appellant last contends that the master's 55/45 division of the marital property was in error. Specifically, appellant argues that the master (1) failed to give due regard to the § 401(d) factors; (2) erred in considering appellant's "greater anticipated" Social Security benefits; (3) failed to consider appellee's dissipation of marital assets; (4) took into account appellant's marital misconduct in equitably distributing the marital property, misconduct not being a § 401(d) factor; and (5) failed to consider appellee's employment (and related health benefits). These claims are meritless.

Section 401(d) of the Divorce Code provides as follows:

In a proceeding for divorce or annulment, the court shall, upon request of either party, equitably divide, distribute or assign the marital property between the parties without regard to marital misconduct in such proportions as the court deems just after considering all relevant factors including:

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training, or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of

the marital property, including the contribution of a party as a homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective. 23 P.S. § 401(d). We believe that the master gave more than adequate regard to these factors, *see* Master's Report at 23–31, in finding that, "[i]n order to attempt to recognize the health insurance and Social Security factors and effectuate economic justice," (*id.* at 31), he recommended a 55/45 division of the property.

We find no error in the master's consideration of appellant's anticipated Social Security benefits in equitably distributing the marital property. Section 401(d) requires that "[t]he sources of income of both parties, including but not limited to medical, retirement, insurance or other benefits," be considered by the court (or master, *see* Pa.R.Civ.P. 1920.51(a)(2)(i) ) in equitably distributing the marital property. 23 P.S. § 401(d)(6). The master found, but we need not find here, that the benefits were not marital property subject to equitable distribution. *See Sorbello v. Sorbello,* 21 Pa. D. & C.3d 187, 196–97 (Ct.C.P. Cumberland County 1981) (holding that Social Security benefits are not marital property subject to equitable distribution).

■ Appellant also argues that the master erred in failing to consider appellee's dissipation of the marital assets. We disagree. The master "consider[ed] the monies paid by [appellee] out of the funds withdrawn from [two joint accounts] as dissipation of marital assets...." (Master's Report at 30). Moreover, the master included the two accounts in question as assets within appellee's control when he equitably distributed the marital property. *See id.* at 32–34. Therefore, any monies that appellee dissipated were included in her fifty-five percent share of the marital estate.

■ We also find that the master did not improperly consider appellant's marital misconduct in equitably distributing the marital property. Equitable distribution is to be done "without regard to marital misconduct." 23 P.S. § 401(d). Here, the master mentioned appellant's "extramarital affair" only in the context of computing appellant's dissipation of marital assets. *See* Master's Report at 29–30. Thus, such misconduct was *not* a factor in the master's recommended distribution of the marital property other than as it related to appellant's dissipation of marital assets.

■ Appellant last argues that the master erred in failing to consider appellee's employment at Mack Trucks and the health benefits she received in conjunction with such employment. Our review of the record indicates that appellee's position was only temporary. *See* Appellant's Petition for Suspension of Support Order *and* Appellee's Objection to Petition for Suspension of Support Order (appellee "expects to be [employed] for ... several months").[10] Furthermore, in discussing the third factor to be considered when equitably distributing marital property, "[t]he ... employability ... of each of the parties," 23 P.S. § 401(d)(3), the master noted that, after appellee's employer, Hellertown Manufacturing, closed its Hellertown plant, "she made application to Western Electric, Durkee's and Burron, [but] she was not able to obtain employment." (Master's Report at 25). This finding supports an inference that appellee had difficulty in obtaining permanent employment. Accordingly, this claim is meritless.

For the foregoing reasons, we vacate the judgment of the lower court, affirm in part and reverse in part the court's order, and remand this case for proceedings consistent with this opinion.

Judgment vacated; order affirmed in part and reversed in part; case remanded for further proceedings consistent with this opinion. Jurisdiction is relinquished.

10. The parties agreed to incorporate into the record documents from their related support matter. (N.T. May 2, 1983 at 200–01).