747 A.2d 337

**Karen E. HORNER, now Karen E. Snyder, Appellant,**

**v.**

**Daniel E. HORNER, Appellee.**

Supreme Court of Pennsylvania.

Submitted June 10, 1997.

Decided Dec. 23, 1997.

James B. Yelovich, Yelovich & Flower, Somerset, for Karen E. Snyder.

W. Patrick James, Johnstown, Josephine L. Johnson, Raphael, Ramsden, Behers & Frantz, P.C., Washington, for Daniel E. Horner.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

*OPINION OF THE COURT*

FLAHERTY, Chief Justice.

This is an appeal from the judgment of the Superior Court affirming the trial court's classification of a military separation payment as non-marital property. We granted this appeal to address an issue of first impression. Appellant challenges the trial court's determination that payment of a lump-sum military separation incentive to her former spouse is not retirement pay, a share of which she would be entitled to receive pursuant to a divorce decree agreed upon by both parties.

In 1988, after approximately twelve years of marriage and the birth of two children, Daniel and Karen Horner were divorced. At that time, Mr. Horner was an officer on active duty in the United States Army. In anticipation of the divorce, the parties entered into a separation agreement which was subsequently incorporated into the divorce decree. The agreement provided, in pertinent part, as follows: *"Upon his retirement,* the Husband agrees to pay the Wife a percentage of the Husband's *net retirement pay* based on the formula (½) $\times$ (11/X), where X equals the number of years of the Husband's military service."[1] Separation agreement at 2 (emphasis added). Both parties have since remarried.

Mr. Horner, having attained the rank of major, was passed over for promotion to the rank of lieutenant colonel. Additionally, as the sole caretaker of a severely handicapped child, Mr. Horner was reluctant to accept new orders which would entail his transfer from an area where he had spent several years building a network of medical care and special education providers. In light of his failure to be selected for promotion and his non-deployable status, Mr. Horner consulted with his superiors in his chain of command and was advised that even though he was "retention eligible," his subsequent chances for

---

1. The agreement also awarded custody of the eldest child, who is severely disabled, to Mr. Horner. Separation agreement at 4.

promotion were negligible and he would most likely be passed over a second time and consequently separated involuntarily from the army. If he were to be involuntarily separated, Mr. Horner would not be eligible for retirement benefits, although he would receive a one-time severance payment. However, his superiors advised him that if he voluntarily separated from active duty and entered the ready reserve, there was a good chance that he would be promoted to lieutenant colonel, thereby earning extra time in which to qualify for full retirement benefits.

During this period, in order to reduce the size of U.S. military forces, Congress enacted legislation providing for either a one time lump-sum payment (Special Separation Benefit, or SSB) or multiple annual payments (Voluntary Separation Incentive, or VSI) of separation incentives based upon years of active service. 10 U.S.C. §§ 1174–75 (1991). Officers eligible for retirement benefits (including, *inter alia*, retirement pay) are not eligible for these separation programs. *Id.* Additionally, members who receive separation pay pursuant to these programs and subsequently qualify for retirement will have a percentage of their pay deducted from their retirement check until the amount received as a separation incentive is repaid. *Id.*

As a condition of receiving separation pay under these programs, members must agree to serve a minimum of three years in the ready reserve. *Id.* In April, 1992, Mr. Horner took advantage of the SSB[2] program, was voluntarily discharged from active duty, and joined the ready reserve. In October, 1993, Mr. Horner was promoted to lieutenant colonel. This promotion allows Mr. Horner an additional seven years in which to qualify for retirement.

After learning of Mr. Horner's receipt of separation pay, appellant petitioned the common pleas court in Bedford County to enforce the separation agreement, claiming that the separation pay was in fact retirement pay, a proportional share of which she was entitled to receive pursuant to the

2. Mr. Horner received a one-time lump-sum payment of nearly $109,-000 before taxes.

divorce agreement. The trial court disagreed with her characterization of the separation benefit as retirement pay and held that she was not entitled to receive a share of the pay. The Superior Court affirmed in a memorandum opinion with Judge Saylor dissenting. We are now asked to determine whether this type of military separation benefit is to be classified as retirement pay includable in the marital estate for the purposes of the separation agreement incorporated in the divorce decree.

■ The Pennsylvania divorce code provides, in pertinent part, as follows: marital property means "all property acquired by either party *during the marriage* ... except: ... [v]eterans' benefits exempt from attachment ... except for those benefits received by a veteran where the veteran has waived a portion of his military retirement pay in order to receive veterans' compensation." 23 Pa.C.S. § 3501(a)(6)(emphasis added). Appellant first argues that the separation pay Mr. Horner received was compensation obtained at the cost of surrendering his retirement benefits, in which both parties have an interest, and is therefore, marital property under the code. This argument is based upon the following exchange which occurred during Mr. Horner's deposition:

> *Plaintiff's counsel:* To be clear on the matter of giving up retirement pay benefits, the acceptance of the separation bonus that you received, Mr. Horner, that bonus would make you ineligible to receive any retirement for the 16 years and seven months and 29 days that you had; is that correct?
>
> *Mr. Horner:* That's correct.

Record at 83a.

■ There are some fundamental flaws in appellant's argument. First, the definition of marital property applies only to interests acquired during the marriage. The Horners were divorced in 1988. As pointed out in the appellant's own brief, the SSB program under which Mr. Horner received his separation benefit was enacted as part of the National Defense Authorization Act for 1992, four years after the marriage had

ended. This interest was neither acquired during the marriage nor was it a benefit the acquisition of which could have been foreseen or anticipated.

Second, while it is not disputed that Mr. Horner's deposition testimony was factually accurate, the answer given was in response to a compound question in which appellant assumes that Mr. Horner had retirement benefits to surrender. Mr. Horner was not entitled to any retirement benefits after the sixteen plus years he had served in the army; he would receive nothing but a one-time severance payment if discharged involuntarily. He would not be eligible to receive retirement benefits unless he had completed at least twenty years of active service. In other words, Mr. Horner had not acquired a vested percentage of his retirement pay to which he would be entitled upon separation; rather he had merely accumulated a number of years of service towards eventual retirement eligibility.

Next, appellant argues that the lower courts' treatment of *LaBuda v. LaBuda*, 349 Pa.Super. 524, 503 A.2d 971 (1986), and *Gordon v. Gordon*, 436 Pa.Super. 126, 647 A.2d 530 (1994), was erroneous, particularly in light of our subsequent reversal of *Gordon*. *See Gordon v. Gordon*, 545 Pa. 391, 681 A.2d 732 (1996). In both *Gordon* and *LaBuda*, the employee-spouses had received early retirement incentives in addition to their vested pension payments. These incentives were designed to encourage employees who had vested pension rights to retire sooner than they otherwise might, a cost-cutting strategy which has become more commonly employed in recent years. In both cases, the Superior Court determined that when retirement incentives accrue after separation, and prior to separation neither party had an expectation of receiving the incentives, the incentives are to be classified as non-marital property. *Gordon*, 647 A.2d at 539, *LaBuda*, 503 A.2d at 976. Subsequently, this court confirmed the principle that "[i]n no case may assets earned after separation be considered in calculating the value of a pension." *Gordon*, 681 A.2d at 734.

Appellant argues that the requirement of forfeiture of accrued retirement benefits distinguishes the present case from

both *Gordon* and *LaBuda*. Appellant's understanding of *Gordon* and *LaBuda* is inapplicable since, as previously stated, Mr. Horner had no retirement benefits to forfeit; he may, however, become eligible for retirement benefits as a result of his service in the reserves. If and when he becomes eligible to collect retirement benefits by accruing the necessary time in the reserves, all monies received under the separation incentive program must be repaid.

Furthermore, in *Gordon* and *LaBuda* the payments in question were early retirement incentives paid in addition to the retirement pensions earned by the employee-spouses. The incentive at issue here was designed by Congress to encourage the early separation, not early retirement (two entirely distinct events in military service), both of individuals facing involuntary separation and of those who could not, because of their service status, be involuntarily separated. H.R.Rep. No. 311, 102d Cong., 1st Sess. 556 (1991), 1991 U.S.Code Cong. & Admin.News p. 918. The incentive was intended, not as a substitute for retirement benefits, but to ease the transition to civilian life for those service members. H.R.Rep. No. 311, 102d Cong., 1st Sess. 556 (1991).

In fact, there was discussion as to whether, instead of the aforementioned separation incentives, early retirement should be offered to those with between fifteen and twenty years of service. H.R. Conf. Rep. No. 102–311, 102d Cong., 1st Sess. 1036 (1991), 1991 WL 255963. However, in the end, early retirement which would grant members with between fifteen and twenty years of service full retirement benefits, albeit at a reduced pay rate, was not authorized. Early separation incentives were offered to all qualifying members without regard to time in service (exclusive of minimum service time requirements). It is apparent therefore, that the trial court correctly applied *Gordon* and *LaBuda*.

■ Finally, appellant argues that the lower courts' classification of this separation pay as non-marital property conflicts with 23 Pa.C.S. § 3102(a)(6), which states that it is Commonwealth policy to "[e]ffectuate economic justice" between di-

vorcing parties. *Id.* Appellant argues that since, at the time of the separation agreement, both parties anticipated that Mr. Horner would complete twenty years of service, at which time they both would begin receiving their proportional shares of his retirement pay, Mr. Horner cannot now unilaterally deprive her of her share. She claims that the decision to accept a proportionate share of the SSB, or alternatively, a proportionate share of potential future retirement pay should be hers.

Appellant's ability to articulate Mr. Horner's state of mind at the time of the separation agreement notwithstanding, sometimes, like marriages, careers do not progress as hoped for or as planned. In light of his status as a once passed-over, non-deployable officer whose chance for promotion and subsequent retirement was doubtful at best, Mr. Horner made a difficult decision in what he believed to be the best interest of all parties. He now has a much better chance of becoming eligible to one day receive his retirement pay; indeed, he has been promoted, ensuring that he has sufficient time in which to qualify for retirement benefits. Additionally, the Superior Court directed that if he should subsequently receive retirement pay, for purposes of the separation agreement, "net retirement pay" will include his SSB payment deductions. This ensures that appellant will receive the full share to which she is entitled.

For the foregoing reasons, the judgment of the Superior Court is affirmed in all respects.