## Hawkins v. Hawkins

*Richard James*, for appellant.
*Christopher Mattox*, for appellee.

DOZOR, *J.*, March 26, 2014—This is an appeal from this court's final order of equitable distribution dated January 17, 2014. The nature and history of the case is as follows:

Appellant/plaintiff/wife (hereinafter "wife") filed a complaint in divorce on March 22, 2007. Appellee/defendant/husband (hereinafter "husband") filed his answer on March 29, 2007.

On November 24, 2009, Master Lehrkinder filed his Master's Hearing Report and recommendation that rendered a determination with respect to the date of the parties' separation. Husband subsequently filed an appeal of the master's report and recommendation, on December 15, 2009, requesting a hearing *de novo* solely on the issue of the date of the parties' separation.

On March 26, 2010, wife filed a petition for bifurcation. On September 3, 2010, wife filed a motion for discovery/case management conference.

On November 15, 2010, Judge Cartisano issued an order rendering a determination that the parties formally separated on December 31, 2003. The November 15,

2010 order from Judge Cartisano also permits husband to withdraw $60,000 annually from his Sunoco/Vanguard retirement account, account number 093518. Additionally, the order dismissed husband's motion in limine to preclude witnesses from the November 8, 2010 hearing, held to determine the parties' date of separation, as moot because no witnesses appeared at the hearing.

Judge Cartisano's November 15, 2010 order also determined that bifurcation of this case was granted. On December 3, 2010, wife filed a notice of intention to request entry of divorce decree and a praecipe to transmit the divorce record. On December 14, 2010, Judge Cartisano signed the bifurcated divorce decree in this case.

This equitable distribution matter was originally scheduled, listed and tried before Master Donald Lehrkinder, Sr., Esquire. However, prior to rendering a determination regarding the equitable distribution of the parties, Master Lehrkinder retired; thereafter, this case was assigned to the undersigned court.

Following the assignment of this case to this court, a pre-trial conference was scheduled on October 25, 2012, following the initial pre-trial conference, this court and the attorneys had numerous conferences prior to the November 27, 2013 equitable distribution trial. In the month leading up to the November 27, 2013 equitable distribution trial, there was a flurry of motions and orders regarding outstanding discovery and possible settlement of this case.

On November 27, 2013, this court held a *de novo*

hearing; following the hearing this court took the matter under advisement. On January 17, 2014, this court issued final order of equitable distribution, which is the subject of this appeal.

On February 4, 2014, wife filed a notice of appeal. On February 6, 2014, this court issued an amended order requesting a statement of errors complained of on appeal pursuant to Pa. R.A.P 1925(b).[1] In response to the 1925(b) request, wife submitted the following issues on appeal:

1. The trial court abused its discretion and misapplied the existing law in the Commonwealth of Pennsylvania in choosing the valuation date for marital property as the date of separation (December 31, 2003) as opposed to the preferred valuation date being the date of distribution. Said determination awarded to the defendant all appreciation in the marital property and accounts over the intervening time period of the separation which acts as a windfall for the defendant.

2. The trial court erred in choosing the separation date versus the date of distribution for valuing assets as the law applied by the trial court related to closely held businesses/corporations controlled by one party as opposed to marital assets such as savings, retirements, pensions, real estate, etc.

3. The trial court erred and committed an abuse of

---

1. This court notes that on February 6, 2014, this court sent out a 1925(b) request; however, this court incorrectly requested the statement of matters complained of on appeal from husband instead of wife. Therefore, this court issued an amended order requiring 1925(b) statement on February 6, 2014.

discretion in determining the value of defendant's lump sum pension payment from Sunoco and therefore, failed to apply a coverture fraction which would have established the marital portion of defendant husband's Sunoco retirement.

4. The trial court erred and committed an abuse of discretion when it determined that defendant's severance pay package, which was based in part upon years of service while the parties were married and residing together, was not a marital asset subject to being apportioned for marital property purposes by applying a coverture fraction to the sum received less unused vacation days which the defendant had accumulated after the parties separated.

## FACTS:

Appellant, hereinafter "wife," Donna Iezzi Hawkins (DOB 3/1/1957), is currently 56 years of age and currently resides at 56 Rockford Road, Wilmington, DE 19806. Appellee, hereinafter "husband," Joseph Hawkins (DOB 1/25/1950), is currently 64 years of age and currently resides at 100 Shadeland Avenue, Apartment 232, Drexel Hill, Pennsylvania 19026.

The parties were married on October 20, 1979 and have one emancipated child, Alicia (DOB 5/13/1986), born of the marriage. Wife also has a son from her previous marriage, Brian (DOB 1/25/1976), who was adopted by husband and is also emancipated.

Wife is employed as an office manager at the University

of Pennsylvania and has held that position since 1992. Wife receives "good benefits" from the University of Pennsylvania and her present gross salary is $54,000. *See* plaintiff's Exhibit, P-23. In addition, wife holds a Bachelors of Arts degree from the University of Pennsylvania which she received during the parties' marriage.

Since the December 14, 2010 divorce, wife has remarried and purchased a home with her new husband who has a background as an accountant. Wife testified that her current household income is approximately $150,000. This court also heard credible testimony that wife is in excellent health.

Husband was employed with Sunoco during the parties' marriage and continued post separation until retiring at the age of 55. Husband testified that he was effectively forced into retirement in December of 2005 after Sunoco lowered his grade level by two grades. Husband received an incentive package for retirement from Sunoco and has been unable to secure suitable employment since. Husband is currently 64 years of age. Husband is not in good health as he suffers from arthritis. Husband has little prospect of meaningful employment in the future.

At the equitable distribution hearing both parties represented that the date of separation was December 31, 2003. This court notes that a November 15, 2010 order issued by Judge Cartisano states that "the date of final separation for equitable distribution purposes shall be December 31, 2003." Wife filed for divorce on March 19, 2013 and the parties were divorced by a bifurcated divorce

decree on December 14, 2010.

Husband has helped the parties' daughter, Alicia, pay for her college tuition and loans. After separation husband took over four (4) Sallie Mae loans on behalf of Alicia. *See* defendant's Exhibit, D-2. This court notes that Alicia attends college at the University of Pennsylvania and since her mother (wife) is an employee there, 75% of daughter's tuition is paid by the University. This court heard testimony that husband has paid $55,000 of daughter's college loans/tuition to date and that the present amount owed on those loans is $57,223.02. In addition husband pays $1,400 per month towards the college loans/tuition for the daughter.

The marital residence was sold after wife filed her complaint in divorce and the proceeds were placed in an escrow account.

During the equitable distribution trial, wife called Kenneth Biddick to testify with respect to the present day valuations of the marital estate, including the parties' retirement accounts and plans, stocks, bank accounts, and life insurance cash values. Mr. Biddick was qualified by this court as an expert in forensic accounting. Mr. Biddick testified to the appreciated and accumulated values, dividends, distributions, loans and referred generally to stocks sometime dividing and advised the court that he relied on wife's new husband (who is also an accountant) to provide him with the documents and information upon which he reached his conclusions and testified to in open court.

This court heard extensive testimony that both husband

and wife had and still have numerous retirement accounts and pensions. Husband and wife disagree about the date the court should use to value the various retirement accounts and pensions. Husband submitted to the court that the particular facts and circumstances of this case, supported by the prevailing case law requires a date of separation value, and wife argues that the prevailing case law requires a date of distribution value.

There is no disagreement between the parties regarding the date of separation, December 31, 2003, and the value of the various retirement and pension plans as of that date. There is also no disagreement that the various retirement accounts/pensions have had significant withdrawals by both parties since December 31, 2003. Since the December 31, 2003 date of separation, both parties have relied upon and withdrawn, on multiple occasions, substantial amounts from the retirement funds, with each party assuming their own tax consequences for the early withdrawal.

Wife testified that she withdrew $97,000 from her retirement funds for living expenses for herself and her new husband as well as legal expenses. Husband was permitted, by a court order signed by Judge Cartisano on November 15, 2010, to withdraw up to $60,000 annually from his Sunoco Vanguard retirement account. Husband testified to withdrawing a total of $135,000 from his retirement funds to assist with his living and medical insurance expenses since he was laid off from Sunoco in December of 2005.

This court was provided with some testimony, based

upon Mr. Biddick's extrapolation as to the value of this account and the monthly amount that wife should receive upon her retirement. This court again has concerns, with the methods and documentation, or lack thereof, used by wife's expert to reach the total and monthly amount that will be provided to wife upon her retirement from the University of Pennsylvania.

Based upon the divorce code and the current case law, this court determined that wife's retirement allowance plan from the University of Pennsylvania is considered marital property by this court.

This court was also asked to equitably divide the Sunoco wage continuation severance pay, which was provided to husband upon his retirement from Sunoco in December of 2005. This retirement/severance package was consisted of husband's wage continuation and his unused vacation days and it was provided to husband upon his retirement in December of 2005. Based upon the divorce code and the current case law this court further determined that husband's wage continuation and severance pay, that included unused vacation days, will be not be considered marital property by this court and is not considered a marital asset as it is post separation income for husband.

## DISCUSSION:

The standard of review for assessing the propriety of an equitable distribution order is whether the trial court abused its discretion by a misapplication of the law or failure to follow proper legal procedure. *Yuhas v. Yuhas*, 79 A.3d 700, 705 (Pa. Super. 2013) citing *McCoy v. McCoy*,

888 A.2d 906, 908 (Pa. Super. 2009). The appellate court has consistently stated that:

> [a] trial court has broad discretion when fashioning an award of equitable distribution.... We do not lightly find an abuse of discretion, which requires a showing of clear and convincing evidence. This court will not find an abuse of discretion unless the law has been overridden or misapplied or the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence in the certified record. In determining the propriety of an equitable distribution award, courts must consider the distribution scheme as a whole. We measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Reber v. Reiss*, 42 A.3d 1131, 1134 (Pa. Super. 2012) quoting *Biese v. Biese*, 979 A.2d 892, 895 (Pa. Super. 2009) (internal citations and quotations omitted).

When rendering a determination for the equitable distribution of marital property, the trial court has the authority to divide the award as the equities presented in the particular case may require. *Reber*, 42 A.3d at 1137 quoting *Schenk v. Schenk*, 880 A.2d at 639. If the appellate court finds that a trial court has abused its discretion either by a misapplication of the law or failure to follow proper legal procedure, that abuse of discretion is not found lightly; rather, there must be clear and convincing evidence of an abuse of discretion by the trial court.

*Strauss v. Strauss*, 27 A.3d 233, 235 (Pa. Super. 2011), *reargument denied* (Sept. 29, 2011), *appeal granted*, 41 A.3d 1286 (Pa. 2012); *Smith v. Smith*, 904 A.2d 15, 18 (Pa. Super. 2006).

Every case of equitable distribution is fact specific, with a result driven by the individual facts, circumstances and evidence of record and the application of precedent, with the goal to achieve economic justice.

Valuation Date

The first issue on appeal is whether this court abused its discretion and misapplied the existing law in choosing the date of separation, instead of the date of distribution, as the valuation date for the marital property.

In determining the value of marital assets, a court must choose a date of valuation that best works economic justice between the parties. *Smith*, 904 A.2d at 18 quoting *McNaughton v. McNaughton*, 603 A.2d 646, 649 (Pa. Super. 1992).

Consistent with the public policy considerations of the divorce code in §3102(a)(6) to "provide for economic justice," the court may select the most appropriate date for valuation. 23 Pa. C.S.A. §3102(a)(6). Trial courts are given discretion in choosing the valuation date for marital property in order to achieve economic justice between the parties. *Smith*, 904 A.2d at 22.

The Superior Court has stated: "we do not attempt ... to establish a valuation [date] to be used in every situation. To recognize a specific valuation date as a matter of law

would deprive the trial court of the necessary discretion required to effectuate economic justice." *Sergi v. Sergi*, 506 A.2d 928, 932 (Pa. Super. 1986).

The date of distribution has been the preferred date for determining the value of a marital asset. *Nagle v. Nagle*, 799 A.2d 812, 820 (Pa. Super. 2002). However, courts have consistently found that under certain circumstances the date of separation is more appropriate than the date of distribution for purposes of valuing marital assets. *Litmans v. Litmans*, 673 A.2d 382 (Pa. Super. 1996). The date of separation has been selected as the preferred valuation date in circumstances when one spouse consumes or disposes of marital assets, or there are other conditions that make current valuation difficult. *Benson v. Benson*, 624 A.2d 644 (Pa. Super. 1993); *McNaughton*, 603 A.2d at 649.

"Failure to permit a trial court to value marital property at the time of separation could result in allowing a spouse to reduce the value of marital property through unbridled consumption." *Sergi*, 506 A.2d at 932.

Wife appeals this court's use of the date of separation, instead of the date of distribution, for valuing assets. Wife erroneously concludes, in her statement of matters complained of on appeal, that the legal precedent adopting the date of separation is applied only in circumstances where there is a valuation of closely held businesses/corporations controlled by one party. Courts have consistently valued marital assets such as savings, retirements, pension, real estate, etc. from of the date of separation as economic justice requires.

For example in *Barnhart*, the Superior Court held that the husband's pension should be valued from the date of separation. *Barnhart v. Barnhart*, 494 A.2d 443 (Pa. Super. 1985). The husband withdrew the $12,000 that vested in his pension, acquired during the marriage and prior to separation, to pay debts and expenses. *Id.* By using the date of distribution the trial court allowed the husband to deplete a marital asset after separation, but before the divorce, which defeats the purpose and spirit of equitable distribution. *Id.*

Mandating the use of one particular valuation date "would completely nullify the protection of the marital property distribution provisions of the code since it would mean that any property acquired during marriage and subject to equitable distribution could be removed from such distribution by a spouse merely consuming it after separation and before the divorce. We cannot allow a spouse to so easily defeat the purpose and spirit of equitable distribution." *Id.* at 446.

## 1. Retirement / Pension Accounts

At the equitable distribution trial this court heard extensive testimony regarding husband and wife's numerous retirement accounts and pensions. There is no dispute between the parties that both, husband and wife, withdrew substantial distributions from their respective retirement/pension accounts between the date of separation and the equitable distribution trial, with each party assuming their own tax consequences related to their individual withdrawals.

The expert witness' opinion at trial with respect to the present day valuations of these accounts is found to be only conjecture and not a value to be credibly relied upon within a reasonable degree of certainty by this court. This court finds that the use of present day valuation of both parties' retirement/pension accounts for equitable distribution purposes would be improper, fundamentally and economically unfair, unjust, unwarranted, and would be financially unbearable to husband and a windfall to wife.

## 2. Stock

There is no disagreement between the parties that wife completely dissipated one of her individually held stocks at some point after the date of separation and before equitable distribution trial held. The court determined, after hearing credible testimony and reviewing defendant's Exhibit D-4, that wife's Sunoco stocks were worth $28,508.42 as of the December 31, 2003 separation date.

The use of the separation date as the date of valuation for this stock is the one "most likely to achieve economic justice." Using the date of separation allows promotes the purpose and spirit of equitable distribution and prevents one spouse from depleting a marital asset after separation but before divorce.

## B. Coverture Fraction

The third issue complained of on appeal by wife is that this court erred and committed an abuse of discretion by failing to apply a coverture fraction to establish the marital portion of husband's Sunoco retirement and severance pay

package.

The sole purpose of the coverture fraction is to determine what portion of an asset's value is attributable to the years of marriage and hence marital property subject to equitable distribution. *DeMarco v. DeMarco*, 787 A.2d 1072, 1076-77 (Pa. Super. 2001). If this marital portion is clear from the records of the plan itself, the use of the coverture fraction is unnecessary and potentially unfair to either the employee or non-employee spouse. *Id.* at 1077.

If upon reviewing the account records the value of the plan at both the date of marriage and date of separation is apparent, then the marital portion of the pension account is easily established by taking the difference of the value between the two dates. *Paulone v. Paulone*, 649 A.2d 691, 694 (Pa. Super. 1994).

This court correctly valued husband's Sunoco retirement pension and the marital portion. Husband began working for Sunoco after the parties' date of marriage, October 20, 1979, and continued to in that position post separation until his forced retirement on December 31, 2005. Therefore, the value of husband's retirement benefits, paid by Sunoco constituted the marital property and the marital portion of husband's Sunoco retirement benefits, that being the money accumulated from October 20, 1979 until December 31, 2003 was properly valued this court and equitably divided between the parties. Furthermore, this court properly determined that husband's severance package with wage continuance was not marital property that was subject to equitable distribution as it was post

separation income for husband.

B. Husband's Severance Pay Package

Wife's final issue on appeal concerns this court's determination that the wage continuation and severance pay, received by husband after the date of separation, is not marital property subject to equitable distribution. The Pennsylvania Divorce Code defines marital property as "all property acquired by either party during the marriage... except (4) Property acquired after final separation until the date of divorce..." 23 Pa. C.S.A. § 3501(a). "Whether an asset is marital property or separate property for purposes of distribution of the marital estate is a matter reserved to the sound discretion of the trial court." *Goodemote v. Goodemote*, 44 A.3d 74, 77 (Pa. Super. 2012) quoting *Carney v. Carney*, 673 A.2d 367 (Pa. Super. 1996).

Early retirement incentive plan benefits offered by an employer to a spouse are not marital property; unlike retirement benefits, which accrue during course of employment, early retirement incentives serve as an inducement to persuade termination. *Gordon v. Gordon*, 647 A.2d 530, 539 (Pa. Super. 1994). Similarly in *LaBuda*, the Superior Court held that a special retirement program offered to the husband after the date of marital separation should not be considered a marital asset. *Labuda v. Labuda*, 503 A.2d 971 (Pa. Super. 1986).

In both *Gordon* and *Labuda* the Superior Court focused on the expectations of the parties when determining whether a severance package should be considered marital property. Unlike basic pension benefits, which are

planned and contemplated throughout service, incentive plans are not anticipated and not occasioned by continued employment. *Gordon*, 647 A.2d at 539. Wife could not have expected to enjoy these payments when husband received them because neither party had any idea that he would receive the payments until after they separated. *See Labuda*, 503 A.2d at 976. Husband's retirement payments did not become a reality until after the parties' separated. Since the incentives plans provided to husband were unanticipated during their marriage, wife had no expectation in these benefits. *Id.*

This court properly determined that husband's wage continuation and severance pay, that included unused vacation days, should not be considered marital property and is not considered a marital asset, as it is post separation income for husband. The retirement incentive package was an unanticipated benefit offered to the husband, and others in his position, to persuade them to retire early. This court heard no evidence or testimony indicating that the retirement incentive was part of a benefits package in place throughout the marriage. Although the package includes unused vacation days which may have been acquired during the marriage; this court finds that the purpose of this retirement incentive was to replace husband's post-separation earnings rather than compensate him for efforts made during marriage.

## CONCLUSION:

For all of the foregoing reasons, the trial court's final order of equitable distribution should be affirmed.